UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | CRIMINAL NO. 3:17-CR-169-B |
| | § | |
| SAID AZZAM MOHAMAD RAHIM, | § | |
| Defendant. | § | |
| | § | |

ORDER DENYING DEFENDANT'S MOTION TO RECONSIDER
MAGISTRATE JUDGE'S DETENTION ORDER

Before the Court is the defendant's Motion to Revoke or Amend Magistrate Judge's Order of Pretrial Detention (Doc. 33). Having conducted a *de novo* review of the record, including a review of the transcript of the detention hearing before Magistrate Judge Toliver, the Court DENIES the Defendant's motion.

An individual ordered detained by a magistrate judge may file a motion to revoke or amend the detention order in the district court under 18 U.S.C. § 3145(b). The district court must "promptly" review the magistrate judge's order committing the defendant to detention. 18 U.S.C. § 3145(b). "In reviewing such an order, the Court gives no deference to the magistrate judge's factual findings, but reviews them *de novo*." *United States v. Kyle*, 49 F. Supp. 2d 526, 527 (W.D. Tex. 1999). But the Court is not required to hold a new evidentiary hearing. *United States v. Roy*, No. 3:12-CR-054-L, 2014 WL 4261954, at *5 (N.D. Tex. Apr. 5, 2012). Instead, the district court's "review may be based on the evidence presented to the magistrate judge at the detention hearing." *Id.*

Federal Rule of Criminal Procedure 46 provides that 18 U.S.C. §§ 3142 and 3144 govern a defendant's detention before trial. Section 3144 pertains to the pretrial detention of material

witnesses and thus is not applicable here. Because Defendant has yet to be tried, § 3142 governs the *de novo* review of the magistrate judge's order of detention in this case.

Section 3142 provides that a person awaiting trial shall be detained if the judicial officer finds by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person" or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

The Government initially moved to detain Rahim on March 6, 2017 after he was arrested, alleging that he was both a flight risk and a danger to the community. Doc. 3, Motion for Pretrial Detention. After a hearing, Magistrate Judge Toliver granted the Government's motion, finding as follows:

> Based on ... evidence presented, the Court finds probable cause to believe that Defendant did, in a matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully make a materially false, fictitious, or fraudulent statement or representation in an offense involving international or domestic terrorism in a matter within the jurisdiction of the Federal Bureau of Investigation, in violation of 18 U.S.C. § 1001, as alleged in the Complaint, Doc. 1.

> Further, based on (1) the evidence and arguments presented, (2) the pretrial services report, and (3) the factors listed in 18 U.S.C. § 3142(g), and for the reasons stated on the record at the hearing, the Court finds by a preponderance of the evidence that there is no condition or combination of conditions which will reasonably assure Defendant's appearance as required, and by clear and convincing evidence that there is no condition or combination of conditions which will reasonably assure the safety of the community or another person. Those reasons include the nature and circumstances of the charged offense, the weight of the evidence, and Defendant's significant familial and financial ties outside of the United States.

While the Court certainly does not take lightly the freedom of expression guaranteed by the United States Constitution to every citizen, the Court finds very credible the evidence presented in this case which demonstrated that Defendant's speech was not mere expression, but included attempts to incite violent terroristic acts and threats to commit violent terrorist acts, both in the United States and abroad. After review of the translations of Defendant's very graphic conversations over social media, the Court concludes that there are no conditions the Court can impose to reasonably restrict the reach of the former or to prevent the latter. This is especially true in light of Defendant's own explanation in the transcribed recordings that the tools with which terror can be inflicted are readily available, as well as Defendant's repeated calls to commit violent acts ("kill them") anywhere and anytime. Notably, there was no evidence offered or suggestion made that the statements were mere bravado or bluster, thus, for the Court to assume that is the case is to ignore its responsibility to make evidence-based decisions.

In addition to the danger Defendant poses, the threat of his non-appearance is just as apparent from his own words. As Defendant stated to law enforcement agents who questioned him in this case, if he has something to hide (which, based on the many false statements he allegedly made to them, it is reasonable to infer that he does) he would simply leave the country. That, coupled with the fact that Defendant has significant family ties and property interests outside of the United States, leads the Court to conclude that there is no condition or combination of conditions that could reasonably ameliorate Defendant's risk of non-appearance. The credible evidence demonstrates Defendant has communicated that he is willing to do anything for the opportunity to engage in terrorist acts for his beliefs, including killing others and dying in the process. In light of his willingness to go to such extremes, it is not plausible that he would simply comply with any condition or combination of conditions the Court could impose, including simply appearing for Court as required.

Doc. 11, Order of Detention, 1–3.

In his motion to revoke the Magistrate Judge's detention order, Rahim argues that "significant delay"in the case—though not intentionally caused by the Government—threatens to violate the Fifth Amendment's due-process clause by rendering his detention unlawfully "punitive."

U.S. Const. amend. V; Doc. 33, Def.'s Mot. Revoke, 3–5. He further maintains that "a change in circumstances" since his initial detention hearing warrants reconsideration of his status as a "flight risk." *Id.* at 5. Specifically, he submits that his wife and daughter "are currently working on traveling back to the United States" and thus no longer "located abroad," which was one of the reasons for the Magistrate Judge's finding that he had "significant familial and financial ties outside of the United States" and was thus a flight risk. *Id.* Rahim concludes by offering several options—short of detention—for assuring his appearance at trial, including, surrendering his passport, instituting GPS monitoring, and enlisting a third-party custodian. *Id.*

The Government strongly opposes Rahim's release, taking issue with his argument that his continued detention violates his due-process rights and his assertions that he is neither a flight risk nor a danger to the community. Doc. 34, Govt.'s Resp. The Government specifically refutes Rahim's "change in circumstances" argument that his wife and daughter are attempting to relocate to the United States, maintaining instead that Rahim and his wife have divorced and that there is no indication that his former wife and daughter have made any attempt to enter this country. *Id* at 5. The Government also stands by its position that Rahim is a danger to the community, arguing that the evidence at the detention hearing demonstrated Rahim's "attempts to incite violent terroristic acts and threats to commit violent terroristic acts, both in the United States and abroad." *Id.* at 6. Quoting from the transcript of the detention hearing, the Government points to snippets of statements made by Rahim on social media praising the terrorist attacks in France, Turkey and Orlando, Florida and encouraging like-minded people to "[k]ill . . . and . . . not show . . . mercy." *Id.* at 7.

Having conducted the required *de novo* review of the record and having heard the parties'

arguments, the Court DENIES Rahim's motion to revoke his pretrial detention. The record fully supports the Magistrate Judge's determination that Rahim is both a flight risk and a danger to the community and that no conditions or combination of conditions will assure his appearance as required or the safety of the community.

First, as to Rahim's argument that his continued detention violates his due-process rights, he has wholly failed to supply the Court with any authority to support his position that, under the facts and circumstances of this case, his continued detention violates due process. At best, he speculates that upcoming delays may prolong his detention, making it "anyone's guess" how long he will "be forced to remain in custody while awaiting his trial." Doc. 33, Def.'s Mot. Revoke, 4–5. This, he intimates, may result in an "excessively prolonged" detention, thereby violating his due-process rights. *Id.* at 3-5. Though "pretrial detention under the Bail Reform Act does not on its face violate the due process clause of the Fifth Amendment" an "excessively prolonged" detention can. *United States v. Hare,* 873 F.3d 796, 800 (5th Cir. 1989). Whether a defendant's detention is "excessively prolonged" in this sense is determined on a case-by-case basis considering a number of factors, including

> the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay.

*Id.* at 801 (internal citations omitted). Other than an as-yet unrealized fear that his detention will be unduly prolonged, Rahim offers little upon which the Court can base a finding that his detention has been or will be unconstitutionally prolonged. His thus far seven-month pretrial detention under

the Bail Reform Act, standing alone, does not implicate due-process concerns. *United States v. Stanford*, 722 F. Supp. 2d 803, 808 (S.D. Tex. 2010) (internal citations omitted). On the other hand, and in accordance with the *Hare* factors, this case has been declared complex. Doc. 25, Order Declaring Case Complex and Granting Continuance. The charges[1] are serious and the evidence against Rahim, strong. Moreover, Rahim's counsel concedes that the delay thus far has not been occasioned by any negligence or malice of the Government. Doc. 33, Def.'s Mot. Revoke, 4. The Court's review of the record and the relevant *Hare* factors thus indicates that Rahim's pretrial detention, even with reasonable upcoming delays, does not violate Rahim's due-process rights.

Next, Rahim's argument that he is not a flight risk because his wife and daughter are "working on traveling back to the United States" does not persuade the Court. Rahim offers no proof that his wife and daughter are planning to return to this country. Even if he had, this evidence alone would fail to overcome his significant family and property interests outside of this country, the fact that he was attempting to board a flight en route to Amman, Jordan at the time of his arrest with almost $7000 in cash, and the fact that he told federal agents that he would "leave the country" if he had anything to hide. Doc. 34-1, Det. Hrg. Tr., 19–22. For these reasons and the reasons set forth by Magistrate Judge Toliver in her Order of Detention, the Court finds by a preponderance of the evidence that Rahim is a flight risk.

Finally, Rahim fails to challenge or even address the Magistrate Judge's finding that he is a danger to the community. Having reviewed the record, the Court agrees with the Magistrate Judge on this point. The transcript of the detention hearing amply supports the Magistrate Judge's factual

---

[1]Rahim is charged with six counts of making a false statement to a federal agent in a matter involving international terrorism. Doc. 13, Indictment.

finding that Rahim is a clear danger to the community. Doc. 34-1, Det. Hrg. Tr., 19–22. The

Government's response is replete with examples of Rahim's dangerous propensities. As Judge Toliver

succinctly stated in finding that Rahim is a danger to the community,

> the Court finds very credible the evidence presented in this case which demonstrated that Defendant's speech was not mere expression, but included attempts to incite violent terroristic acts and threats to commit violent terrorist acts, both in the United States and abroad. After review of the translations of Defendant's very graphic conversations over social media, the Court concludes that there are no conditions the Court can impose to reasonably restrict the reach of the former or to prevent the latter.
>
> . . .
>
> The credible evidence demonstrates Defendant has communicated that he is willing to do anything for the opportunity to engage in terrorist acts for his beliefs, including killing others and dying in the process.

Doc. 11, Order of Detention, 2–3.

In conclusion, having conducted a *de novo* review of the record, including a review of the

transcript of the detention hearing before Magistrate Judge Toliver, the Court finds by a

preponderance of the evidence that no condition or combination of conditions will reasonably

assure Rahim's appearance at trial and further finds by clear and convincing evidence that no

condition or combination of conditions will reasonably assure the safety of the community should

Rahim be released. Accordingly, the Court DENIES the Defendant's motion (Doc. 33).

**SO ORDERED.**

**SIGNED: November 1, 2017**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 7 -