```
              THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
                     DALLAS DIVISION

UNITED STATES OF AMERICA, )
                          )
          Plaintiff,      )
                          )
vs.                       ) 3:17-CR-00169-B
                          )
SAID AZZAM MOHAMAD RAHIM, )
                          )
          Defendant.      )
```

```
            TRANSCRIPT OF PROCEEDINGS
              JURY TRIAL - VOLUME 4
         BEFORE THE HONORABLE JANE J. BOYLE
            UNITED STATES DISTRICT JUDGE
                   MAY 3, 2019


              A P P E A R A N C E S

For the Government:

     UNITED STATES ATTORNEY'S OFFICE
     1100 Commerce Street - 3rd Floor
     Dallas, TX  75242
     214/659-8600
     BY:  ERRIN MARTIN
and
     U.S. DEPARTMENT OF JUSTICE
     Counterterrorism Section, National Security
     Division
     950 Pennsylvania Avenue, NW
     Washington, DC  20530
     202/532-4162
     BY:  TARYN MEEKS


For the Defendant:

     WHALEN LAW OFFICE
     9300 John Hickman Parkway - Suite 501
     Frisco, TX  75035
     214/368-2560
     BY:  JAMES P. WHALEN
          RYNE T. SANDEL
```

```
              SHAWNIE ARCHULETA, CSR/CRR
          FEDERAL COURT REPORTER - 214.753.2747
```

```
COURT REPORTER:   SHAWNIE ARCHULETA, TX CCR No. 7533
                  1100 Commerce Street
                  Dallas, Texas 75242

proceedings reported by mechanical stenography,
transcript produced by computer.
```

### JURY TRIAL - VOLUME 4

Charge Conference                                    3

Closing Argument by Ms. Meeks                       15
Closing Argument by Mr. Whalen                      36
Rebuttal Argument by Ms. Martin                     51

Charge Read                                         60

Jury Question                                       95

Verdict                                             96

Reporter's Certificate                             101

1                 (In open court; jury not present.)

2                 THE COURT:  Ms. Meeks, come on up.

3                 MS. MEEKS:  Thank you, Your Honor.

4                 THE COURT:  And tell me what page you are

5      on.

6                 MS. MEEKS:  Your Honor, the government

7      would have an objection to page 12.

8                 THE COURT:  Page 12.  Okay.

9                 MS. MEEKS:  On page 12, on the paragraph

10     underneath the elements where it describes material

11     support or resources.  The statement that:  "Any

12     service refers to services provided to a foreign

13     terrorist organization.  Independently advocating

14     for cause is not providing a service to a Foreign

15     Terrorist Organization."

16                 The government objects and argues that

17     that's not what the HLP case reflects.  Specifically

18     it defines service as an act done for the benefit or

19     at the command of another, stating simply that a

20     person of ordinary intelligence would understand it

21     as different to advocate for a cause than providing

22     a service.

23                 THE COURT:  Do you want independently --

24     that sentence out of there?

25                 MS. MEEKS:  I'm sorry, Your Honor?

```
 1              THE COURT:  Do you want that sentence,
 2   independently organization out of there?
 3              MS. MEEKS:  Yes, Your Honor.  And I would
 4   ask that the definition, as stated by HLP, that a
 5   service is an act done for the benefit or command of
 6   another be included.
 7              THE COURT:  Where is that from?
 8              MS. MEEKS:  It's in the Humanitarian Law
 9   Project, Holder v. HLP, Your Honor.  It's on page
10   25 -- I'm sorry, 24.  23 to 24 under Headnote 16,
11   where it talks about the definition of service.
12              THE COURT:  Okay.  I'll think about that.
13              What else?
14              MS. MEEKS:  Your Honor, the next --
15              THE COURT:  Mr. Whalen, how do you feel
16   about that?
17              MR. WHALEN:  I have no objection to that,
18   Your Honor.
19              THE COURT:  You have no objection to
20   adding what she's asked to add?
21              MR. WHALEN:  No, I have no objection to
22   what you have already added -- or what you have.
23              THE COURT:  Oh, okay.  You have no
24   objection to it, but you do have an objection to her
25   request.
```

```
 1              MR. WHALEN:  Correct.
 2              THE COURT:  Okay.  Okay.  Go ahead.
 3              MS. MEEKS:  And Your Honor, to page 17 --
 4              THE COURT:  Hold on a second.  Let me get
 5    there.  Okay.
 6              MS. MEEKS:  -- the government has an
 7    objection to the first full paragraph about halfway
 8    through, where it states:  "All of you must agree
 9    that the government prove beyond a reasonable doubt
10    that the defendant conspired to provide material
11    support or resources by trying to recruit for ISIS
12    or all of you must agree that the government proved
13    beyond a reasonable doubt that the defendant
14    conspired."
15              This excludes administrative services,
16    which is a legitimate angle of proof here, Your
17    Honor a legitimate -- and without that, the
18    government would be missing an entire theory.
19              THE COURT:  What is it -- what is it --
20    how does it say that?  Tell me what it would say.
21              MS. MEEKS:  By trying to recruit for ISIS
22    or by providing administrative services for ISIS.
23              THE COURT:  And how did that come in in
24    this case?
25              MS. MEEKS:  Your Honor, as a leader in the
```

1  Zello chat room, State of the Islamic Caliphate,

2  that chat room was a benefit to ISIS by, you know,

3  by controlling or gathering ISIS members and giving

4  directives.  As that, he was providing an

5  administrative service as a moderator and

6  administrator.  That's on of the theories, his

7  actions, not just his words.

8          THE COURT:  Okay.  Mr. Whalen, if you

9  could just speak up from there.

10         MR. WHALEN:  Your Honor, I have no

11  objection to the charge that you have proposed.

12         THE COURT:  You would object to her

13  change.

14         MR. WHALEN:  Correct.  I would object to a

15  change.

16         THE COURT:  Okay.  What else?

17         MS. MEEKS:  Your Honor, just one more

18  comment with regard to page 12, because the

19  government does feel this is very important.

20         THE COURT:  Page 12.  Page 12.  Going back

21  to page 12.  Okay.

22         MS. MEEKS:  With that paragraph, Your

23  Honor, the government does feel this is important.

24  The government would not object to that last line,

25  "any service refers to services provided."  However,

```
 1   that it also include the definition of what a
 2   service is under Humanitarian Law Project.
 3            THE COURT:  So tell me what all you want
 4   added to 12.
 5            MS. MEEKS:  We would like the language:
 6   "Service is an act done for the benefit or at the
 7   command of another."
 8            THE COURT:  And where is that from?
 9            MS. MEEKS:  Again, Your Honor, it's on
10   page 24 of the HLP case, which is 561 U.S. 1.
11            THE COURT:  "Independently advocated for a
12   crime is not providing a service."  You want that
13   out?
14            MS. MEEKS:  We would prefer to have it
15   out, Your Honor, because I don't think it accurately
16   represents what the Court was saying there.  But if
17   it's in, the government is -- would very strongly
18   request the additional services.
19            THE COURT:  What else do you want?
20   Anything else?
21            MS. MEEKS:  That's it, Your Honor.
22            THE COURT:  All right.  What else?
23   Anything else with the charge?
24            Ms. Meeks, anything else?
25            MS. MEEKS:  No, Your Honor, nothing else.
```

```
 1              THE COURT:  Mr. Whalen?

 2              MR. WHALEN:  Your Honor, the original

 3    thing -- I have some legal objections just to

 4    preserve error that don't affect the language of the

 5    charge.  The only issue I do see is there is not any

 6    language about his failure to testify.

 7              THE COURT:  Oh, yes, let's do that.

 8              MR. WHALEN:  That is not in there.

 9              THE COURT:  Yes, let's do that, his

10    failure to testify.

11              MR. WHALEN:  And I think that would be all

12    I have as it relates to the charge, Your Honor.

13              THE COURT:  Okay.  But you would object to

14    the changes that Ms. Meeks has proposed, that she's

15    proposed on page 12 and page 17.

16              MR. WHALEN:  Correct.  However, if

17    Ms. Meeks did say that if you were to add the

18    definition about services but leave in the

19    independently advocating for a cause, I may agree to

20    that compromise.

21              THE COURT:  Okay.  And the other is on

22    page -- let's see.  What page?  17?

23              MS. MARTIN:  Yes, Your Honor.

24              THE COURT:  And that is -- yes, by

25    providing services.  Okay.  And that's it?
```

```
 1              MS. MEEKS:  From the government, yes, Your
 2   Honor.
 3              MR. WHALEN:  Yes, Your Honor.
 4              And just to point out, I know we are
 5   referring to the page numbers, page 9 is blank.
 6              THE COURT:  Yes, we know that.
 7              MR. WHALEN:  Okay.  So if we come back, we
 8   may need to adjust the objections to what page we
 9   are talking about.
10              THE COURT:  I will have you do your final
11   objections on the record.  We have a juror that's
12   missing, which is good, because we're not finished
13   yet.  She's had her car towed, but -- it's the lady
14   right down there on the far end.  She will be here
15   at 10:00, 10:30 at the latest.  I think that's fine.
16   The jury is having to wait, so we might as well have
17   to wait for her.  That's all I know.  We will be in
18   recess.
19              (Recess taken.)
20              THE COURT:  Ms. Meeks, you want to talk
21   about the charge and give final objections?
22              MS. MEEKS:  Your Honor, the government has
23   no objections.
24              THE COURT:  Okay.  Great.
25              Mr. Whalen, come on up.
```

1          MR. WHALEN:  Your Honor, we would just

2    make a couple of final objections to the charge.

3          THE COURT:  Yeah.

4          MR. WHALEN:  As it relates to the

5    attempted section and the unanimity of theory, the

6    jury is going to consider all three of establishing

7    the chat room of recruiting or personnel.  Based on

8    the evidence, I don't think they should be charged

9    as it relates to the chat room or it recruiting, as

10   either they did or they didn't.  I don't think

11   there's an attempt there, based on the evidence or

12   the argument the government is going to make, so I

13   don't think they should be allowed to consider those

14   two.

15         Also, as it relates to Counts 1 and 2, I

16   don't think they should be allowed to consider

17   establishing the chat room as providing material

18   support.  I don't think the evidence supports that.

19         THE COURT:  Okay.  Anything else from you,

20   Ms. Meeks?

21         MS. MEEKS:  No, Your Honor.

22         THE COURT:  Overruled.  And I'm just going

23   to keep it as it is.

24         What also did you have?

25         MR. WHALEN:  Finally, Your Honor, we would

---

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**

```
 1   object to the charge as a whole and renew our Rule
 2   29 motions as it relates to all the counts, Your
 3   Honor.
 4            THE COURT:  Okay.  Objection overruled.
 5   And we will go ahead and keep the charge as it is.
 6   I will make copies now.
 7            And how long do you want to argue?
 8            MS. MEEKS:  Your Honor, the government
 9   requests 45 minutes total.
10            THE COURT:  Okay.  Mr. Whalen, how about
11   you?
12            MR. WHALEN:  I would like the same.
13            THE COURT:  Okay.  45 minutes.
14            What about your government's opening and
15   closing?
16            MS. MEEKS:  Your Honor, the government
17   requests 30 for the opening portion and 15 for the
18   closing.
19            THE COURT:  30 and 10 and 45.  What about
20   warnings?
21            MS. MEEKS:  Five minutes and -- so five
22   minutes on the opening portion.  And on the
23   secondary portion, Your Honor, is it -- we would
24   request 15 minutes instead of 10.
25            THE COURT:  Okay.  Let me just see this.
```

```
 1   You want 30 and 15.  And what do you want for
 2   warnings?
 3           MS. MEEKS:  Five minutes.
 4           THE COURT:  Five minutes.  And is it 30 at
 5   the beginning?
 6           MS. MEEKS:  Yes, Your Honor.
 7           THE COURT:  And I will give you a
 8   two-minute.
 9           MS. MEEKS:  Thank you, Your Honor.
10           THE COURT:  Okay.  And what kind of
11   warning do you want, Mr. Whalen?
12           MR. WHALEN:  Just a five-minute warning,
13   Your Honor.
14           THE COURT:  All right.  We have to make
15   the copies, and then we will bring the jury in.  All
16   right?  Please get ready for opening and closing.
17   We're going to do that right away.  All right?
18           MS. MEEKS:  Yes, Your Honor.
19           (Recess taken.)
20           THE COURT:  What's your objection to the
21   verdict form, Mr. Whalen?
22           MR. WHALEN:  Your Honor, as it relates to
23   Counts 1 and 2, since they do have the instruction
24   about unanimity of theory, that there should be
25   delineated what theory they relied on to reach their
```

```
 1   verdict of guilty for Counts 1 and 2.  We were

 2   requesting that they have a line or a box for each

 3   of the three different theories and check which one

 4   they agreed on unanimously.

 5             THE COURT:  Explain what you want.

 6             MR. WHALEN:  If it says, "Guilty of the

 7   offense as charged," and then, "We further find it

 8   was for recruiting efforts, personnel or

 9   administrative services," and have them check which

10   one they would like.

11             THE COURT:  Do you have any objection to

12   that?

13             MS. MARTIN:  Yes, Your Honor.  We believe

14   the verdict form is appropriate as given.

15             THE COURT:  Anything else?

16             MR. WHALEN:  No, Your Honor.

17             THE COURT:  Thank you.  Be ready in a

18   minute.

19             (Recess taken.)

20             THE COURT:  Mr. Whalen, I'm denying your

21   request on the verdict form.  I'm not going to add

22   the alternatives.

23             Do you-all have the charge and the verdict

24   form?

25             MR. WHALEN:  Yes, we have the charge.
```

```
 1              THE COURT:  Anything else you wanted to
 2    say about the charge?
 3              MR. WHALEN:  No, Your Honor.
 4              THE COURT:  Anything else about the
 5    charge?
 6              MS. MARTIN:  No, Your Honor.
 7              THE COURT:  Okay.  Everybody ready for the
 8    jury?
 9              MR. WHALEN:  Yes.
10              THE COURT:  I'll have you rest and close.
11    All right?
12              Where is Mr. Sandel?  Is he sick?
13              MR. WHALEN:  He is sick, Your Honor.
14              THE COURT:  I will make sure that both
15    sides have looked at all the exhibits before they go
16    back there.  Every single one you have to look at.
17              Just a second, David.
18              THE COURT:  Okay.  Thank you.
19              Bring them in.
20              (Jury enters courtroom.)
21              THE COURT:  Good morning, Ladies and
22    Gentlemen.  I apologize for the slight delay that
23    you had this morning.  We were working on the
24    charge.  And so we finished it, and I would like to
25    continue with the case now.
```

```
 1                What says the defense.

 2                MR. WHALEN:  Your Honor, on behalf of

 3    Mr. Rahim, we rest.

 4                THE COURT:  What says the government?

 5                MS. MARTIN:  Your Honor, the government

 6    closes.

 7                MR. WHALEN:  We close, Your Honor.

 8                THE COURT:  Okay.  Now we are at the end

 9    of the trial.  I think it went much faster than we

10    expected, so we're going to have the closing

11    arguments.  They both have 45 minutes to give you

12    their view of the case.  It's not evidence.  What

13    they say is not evidence, but it's a chance for you

14    to hear their theory of the case as they see it.

15                So we'll start with the government.  The

16    Government has the burden of proof.  Then we will

17    have the defense, and the defense has no burden, and

18    then we will have a little bit of rebuttal by the

19    government.

20                So let's go ahead, Government, please.

21                MS. MEEKS:  Thank you, Your Honor.

22                (Video clip played in Arabic:)

23                "ISIS will chop your head off, you

24    disbeliever.  ISIS coming to your land.  We are

25    gonna occupy your land, and we are gonna chop your
```

```
 1   head off, we gonna kill you.  We gonna slaughter you
 2   like a sheep."
 3          MS. MEEKS:  When the defendant said that,
 4   it was not just talk, and it was not a joke.  The
 5   defendant was recruiting for ISIS and running an
 6   ISIS platform to support a war effort.
 7          We heard that, during the trial, this
 8   region of the Middle East is called the Levant and
 9   that ISIS's goal is to establish a Caliphate in the
10   Levant, an area of territory that is controlled by
11   them and ruled by strict Shari'a law.  And also the
12   goal would be to expand, to continue to expand.  And
13   others who are nonbelievers or infidels, as they are
14   called, would be required to convert, to pay a tax
15   or to die.
16          In fact, we heard that one of the
17   coconspirators, Ibn Dawla, who is the Italian in
18   this case, said that they didn't plan to stop in the
19   Middle East, they wanted to come all the way to the
20   White House.
21          The platform, the State of the Islamic
22   Caliphate, was run on an application called Zello.
23   It has global reach around the world.
24          We heard from the Zello Chief Technology
25   Officer, Mr. Gavrilov, who says they have
```

```
 1   130 million users all around the world and that
 2   every month they have 3 million monthly active
 3   users.  It's a huge audience.
 4          In the State of the Islamic Caliphate
 5   channel, there were 10,000 users.  Six thousand
 6   could be on at any one point in time.  Most of those
 7   would be listening.  Some of them would be
 8   participating, but most would be listening and
 9   receiving information.
10          There were a range of privacy settings we
11   heard.  And in this case, it's important to note
12   that this was a public channel.  Anyone could get on
13   and listen.  Anyone.  It didn't matter where you
14   were.  It didn't matter how old you were.  You had
15   to be a trusted user to participate, and there was
16   structure to the channel.  In fact, we heard that
17   there was a good deal amount of structure.  But in
18   this case, it was an open channel, and anyone could
19   be there to hear the message.
20          The defendant had several user names that
21   he went by on this channel.  He went by Dr. sa7wat,
22   hola isis, safer-alshahadah, all way isis,
23   angousha@, trip W amojahed, and qoqazi.  But no
24   matter which one he used, the message was always the
25   same:  Recruiting for ISIS and being a leader in
```

1    this channel that served as a platform to talk to

2    ISIS and to deliver the ISIS message.

3              We learned a lot about ISIS over the

4    course of this trial and how it's an unconventional

5    terrorist organization, how it's become a bit of a

6    hybrid.  It's different than the traditional

7    Al Qaeda model that we have been familiar with.

8    It's more accessible.  You can have a direct

9    communication with a leader or you can communicate

10   with supporters or you can be self-radicalized on

11   behalf of ISIS.  Dr. Vidino, with extensive

12   experience and education, told us that if you act

13   for ISIS, you are ISIS.  It makes it dangerous,

14   effective, and accessible.

15             The defendant in the State of the Islamic

16   chat room is the authority.  He never asked

17   questions, Dr. Vidino told us.  In fact, he was

18   always the one that people would ask questions to.

19   They called him Sheikh for a reason.  He was a

20   leader.  He was a top user.  When you look at those

21   Zello records, you can see two of his user names up

22   there at the very top because people liked what they

23   heard from him.

24             He even gave his own fatwas, as Dr. Vidino

25   told us.  And a fatwa, as you will remember, is a

19

```
 1  religious legal order.  And even though the
 2  defendant said over and over again, based on the
 3  message of ISIS and al-'Adnani, no fatwas are
 4  needed, go out and commit these attacks, he still
 5  gave his own.  It was a sophisticated channel with
 6  committees that were set up.  Anyone, again, who
 7  acted on behalf of ISIS was ISIS.  And this,
 8  Dr. Vidino said, this was no keyboard warrior.  He's
 9  seen those you heard.  This was the real deal.
10          The defendant's actions are consistent
11  with recruitment for ISIS, and those actions are a
12  direct benefit to ISIS.
13          Let's talk about the charges in this case.
14  The defendant is charged in Count One with
15  conspiracy to provide material support to a foreign
16  terrorist organization.
17          Now, conspiracy is an agreement between
18  two or more parties to join together and accomplish
19  an unlawful purpose.  It is a partnership in crime.
20  So each count -- let's look at this.
21          The first count is that the defendant and
22  at least one other person agreed to provide material
23  support or resources, including services or
24  personnel, to a foreign terrorist organization, in
25  this case, ISIS.
```

```
 1            There are a lot -- there will be a lot of

 2   evidence that will be before you, and you will have

 3   the opportunity to review that evidence, including

 4   the transcript binders.  So make note of

 5   Government's Exhibits 138, where the defendant and

 6   multiple unknown males in the room were talking

 7   about how everyone in the channel was a mujahedeen

 8   project.  Now, mujahedeen, if you remember, is a

 9   fighter, is an Islamic State fighter.  As a project,

10   they are recruits.  Multiple people at the same time

11   on the channel talking about how they are all

12   recruits.

13            Look at Government's Exhibit 124.  That

14   discusses the committees at length.  This was a

15   structured channel.  There were planning sessions.

16   In fact, they had planned -- they made sessions to

17   plan how to better execute those committees in that

18   channel.

19            Look at Government's Exhibit 136, where

20   someone directly states, "This is the channel to

21   communicate with ISIS."

22            The second element is that the defendant

23   knowingly became a member of the conspiracy with the

24   intent to further its unlawful purpose.

25            While you consider this, remember
```

1    Government's Exhibit 218, where the defendant says,

2    "I am an admin in Zello," knowingly making that

3    statement.

4              And also Government's Exhibit 146.  In

5    that one, several members are talking about how to

6    push members that they consider to be beneficial to

7    the channel, encourage them to talk more, get them

8    to talk more; also to take away stars or trusted

9    user status from people they did not like or who

10   were not participating according to the channel.

11   There was a real structure about becoming a member

12   of this conspiracy.

13             And the third element is that one of the

14   conspirators knowingly committed at least one overt

15   act for the purpose of furthering the conspiracy

16   charged in Count One of the second superseding

17   indictment.

18             When you're considering this element, turn

19   to Government's Exhibit 196.  In Government's

20   Exhibit 196, they are talking about ways in which

21   you could kill someone.  You remember that that was

22   one of the discussions.  Let's get some ideas out

23   there.  Let's talk about these plans.  There are a

24   lot of plans.  How can we kill someone?

25             And in 196, the defendant says:  "Do you

1  know the -- the big machine that mulches the trees?

2  Where you put in the tree and it comes out as wood

3  shavings.  The same thing, where they can put in a

4  French person or an infidel in this machine, and he

5  comes out a perfect cocktail."

6           They discuss different ways to kill people

7  over and over and over again.  Those instructions on

8  ideas are the overt act.

9           Additionally, Government's Exhibit 114,

10  Ibn Dawla is giving bomb making instructions.  On

11  114, he says:  "Brother, this is one of the easiest

12  bombs.  It's called a booby trap explosive."  And

13  then he talks about the kind of filament that you

14  use.  This is an overt act.

15           The next element is that the charged

16  conspiracy existed on or after May 15th, 2014, the

17  date ISIS was a designated foreign terrorist

18  organization.

19           You can look at Government's Exhibit 53,

20  which is the Code of Federal Regulations describing

21  ISIS and when it was established as an FTO.  And

22  then look to the dates of the transactions in this

23  case, of the actions and the words.

24           Finally, this Court has jurisdiction over

25  the offense.  The defendant is a U.S. citizen, so

1    the Court has jurisdiction.  Exhibit 54 and 64 are

2    the passport and his birth certificate, so you know

3    the defendant is a U.S. citizen.

4              The government doesn't have to prove there

5    was a formal agreement under the conspiracy law; nor

6    that conspirators actually succeeded in

7    accomplishing their goal.  That's not required.

8              Marshal Major Napoletano, as you will

9    remember from the Italian Carbianari, testified at

10   length about the coconspirator Ibn Dawla or

11   Monour el Aoual, known as both, and how this

12   conspiracy spanned the globe.  This is an

13   international investigation.  Led them to this

14   person, Ibn Dawla, who was living illegally in

15   Italy.  And they talked directly together with the

16   defendant in groups, as well, monitoring this and

17   running this channel.  And the government -- or the

18   charges requires that there was an agreement to

19   provide material support to ISIS and at least one

20   member made an overt act, not that it actually

21   occurred.

22             Material support or resources is defined

23   as, the purposes of this case, any service to

24   include recruitment or administrative service or

25   personnel, including the defendant.

1           In Count Two, the defendant is charged

2    with attempting to provide material support to a

3    foreign terrorist organization.  Now, the defendant

4    knowingly, as the first element provided, or

5    attempted to provide material support or resources,

6    including services or personnel to the foreign

7    terrorist organization, ISIS.

8           Look to Government's Exhibit 154, where he

9    discusses how the best places to meet are in the

10   land of jihad and how many have mobilized, knowingly

11   recognizing the members of the channel had gone to

12   ISIS controlled territory.  And also look to

13   Government's Exhibit 180.

14           (Video clip played in Arabic:)

15           MS. MEEKS:  The defendant knowingly was

16   giving this advice to a member who had asked

17   about -- a member who said he was from Manchester,

18   England.  He knowingly attempted to provide that

19   recruitment and advice to ISIS.

20           Also, the second element is that the

21   defendant knew that ISIS was a designated terrorist

22   organization or that ISIS had engaged in or was

23   engaging in terrorist activity.

24           And you will recall in Exhibit 174, the

25   defendant actually admitted to being prior Hamas.

1    And as Dr. Vidino explained, Hamas was yet another

2    terrorist organization, but it wasn't extremist

3    enough; it actually tried to act as a legitimate

4    body.  So the defendant, having already belonged

5    admittedly to an FTO, rejected that one to choose a

6    different one, to choose ISIS affirmatively because

7    it matched his ideology:  the violent proclivities;

8    the extreme Shari'a's interpretations.

9            In Government's Exhibit 166 the defendant

10   says:  "This is our terrorism, our terrorism extends

11   and the state is strong by the grace of God.  This

12   is terror, terrorism reaches Turkey.  Yes, our

13   terrorism.  You start it, and we will finish the war

14   with you."

15           The defendant knew that ISIS was a

16   terrorist organization.  There's no doubt.

17           The third element is the Court has

18   jurisdiction over the crime.  Again, you can look to

19   the passport and the birth certificate to know that

20   the defendant is a U.S. citizen.

21           It also, for attempt, the government only

22   needs to show that the defendant only intended to

23   provide material support, intended.  Based on all of

24   the evidence before you, it's very clear what the

25   defendant intended to do.  And that the defendant

1    committed an act constituting a substantial step, a

2    substantial step toward the commission of the crime

3    strongly correlating the criminal intent or

4    corroborating the criminal intent and being more

5    than mere preparation.

6            In Exhibit 160, when the defendant is the

7    talking to another member, saying:  "This is elating

8    news, Angousha," the member says, "there are

9    brothers from this room who have mobilized."

10           And the defendant said, "No, no, no, let's

11   not talk details, not like this on the private,"

12   knowing that the communications in this public

13   platform could be monitored by law enforcement,

14   asking to go to a private chat so that they can talk

15   in further detail, so that they can take a

16   substantial step.

17           And then 194, the defendant saying, "So

18   when will you rise up?  When will you rise up?  I

19   mean attack the policeman.  Attack the false

20   leaders, members, government establishments, airline

21   companies, police stations, government centers,

22   movie theaters and tourism places.  Set fire to

23   Turkey."

24           He's also talking about anywhere that --

25   anywhere that someone can commit an attack in an

 1    infidel country.

 2            That substantial step corroborates his

 3    criminal intent, and it is more than mere

 4    preparation.

 5            Also, please turn to Government's Exhibit

 6    152.

 7            (Video clip played in Arabic:)

 8            "Where are you men?  Where are you?  Days

 9    and years keep passing and time is running out

10    quicker than lightening. Er jihad has been there for

11    many, many years. Some mobilized and some stayed

12    behind. Er, brothers are trying, and we perceive you

13    to be from those who try to mobilize to jihad for

14    the cause of God..."

15            MS. MEEKS:  "Where are you men?  Time is

16    running out.  Come to jihad."

17            The defendant was an immediate threat, and

18    FBI Special Agent Golomb told us that.  Every day

19    the defendant was on the channel recruiting,

20    recruiting more ISIS soldiers, recruiting people to

21    commit attacks in their homelands, running and

22    facilitating this channel.  Every day that was a

23    threat.

24            In this war, there are things called

25    foreign fighters.  We heard about them.  We heard

28

1    about the leaders Abu-Bakr al-Baghdadi and Abu
2    Mohammad al-'Adnani and how Al-Baghdadi is the
3    leader of ISIS and al-'Adnani was one of the
4    leaders, the official spokesperson.  In fact, he was
5    the one that put out that call of arms, the call to
6    action you've heard so much about.  Don't wait for
7    fatwa act in your homeland.  This is what makes this
8    terrorist organization so flexible, so unique, so
9    dangerous.
10           Every army needs reinforcement.  So every
11   time the defendant was telling someone to go over
12   and fight jihad in the Middle East in the Caliphate
13   Land, that's to help replenish an Army.  These are
14   soldiers.  This was an attempt to establish a
15   functioning state.  And the U.S. and coalition
16   countries have been in conflict fighting ISIS for
17   years.  Every soldier that goes out to the
18   battlefield on behalf of ISIS is a threat to a U.S.
19   soldier or coalition soldier.
20           We also heard that when people would
21   sometimes go back to their homelands from the
22   battlefield -- Dr. Vidino talked about this -- that
23   they became -- they were more dangerous because they
24   had been further radicalized and they had training,
25   military training.  So even if they went and didn't

29

1    stay and came back to wherever they were from, they

2    posed a threat to that homeland.

3            The defendant is also charged with making

4    false statements to a federal agent.  The elements

5    in this are:

6            "First:  That the defendant made a false

7    statement to the Federal Bureau of Investigation

8    regarding a matter within its jurisdiction and

9    involving international terrorism;

10           Second:  That the defendant made the

11   statement intentionally, knowing that it was false;

12           Third:  That the statement was material;

13           Fourth:  That the defendant made a false

14   statement for the purpose of misleading the FBI;

15           Fifth:  That the matter involved

16   international terrorism.

17           In Count Three, the defendant is charged

18   with making a false statement to the question by

19   FBI:  "Have you ever discussed with anyone travel

20   for the purpose of jihad?"

21           In Government's Exhibit 156, the defendant

22   has said:  "Wage jihad for the cause of God and ask

23   God to grant you one of two glorious things,

24   martyrdom or victory, in the hopes that you will die

25   as a martyr to be an intercessor for your relatives,

```
 1    to intercede for your parents."  And he's talking to
 2    presumably a younger person here, because they are
 3    asking about permission from their parents to travel
 4    to wage jihad.  Saying, the defendant continues:
 5    "You will intercede for 70 of your relatives.  The
 6    reward for this matter is great."  So he definitely
 7    discussed traveling for jihad, but he told the FBI
 8    agents "No."  He lied.  He knew it was a lie.
 9              On 162, Government's Exhibit, he also
10    talks about mobilizing, mobilizing from that channel
11    to wage jihad.  Again, saying "No" is a lie.
12              In Count Four, the defendant is charged
13    with making a false statement in response to:  "Have
14    you ever been a supporter of the Islamic State,
15    ISIL, ISIS or Daesh?"  Well, we know that's true,
16    but he said, "No."  The defendant lied.  "No, I
17    haven't."  All of the evidence before you, we know
18    that's true.
19              In Count Five, he's charged with lying to
20    the question:  "Have you ever promoted violence on
21    behalf of the Islamic State, ISIS or ISIL?"  When
22    you consider this, when he said, "No," also
23    listen -- or consider, rather, Government's Exhibit
24    190.
25              (Video clip played in Arabic:)
```

1          "...for the kind words.  We do not look at

2     your age, may God bless you, whether you are eight

3     years old so ... or four years or ten years; it does

4     not matter, rather what your creed down deep in your

5     heart is, the creed of al-Wala' wal-Bara'.  Meaning,

6     may God bless you, you can now, I mean according to

7     the area, to attack, I mean, as the Emirs of the

8     Islamic State and the official spokesman of the

9     Islamic State said, 'Be a lone wolf,' if you are

10    able to do something in Turkey so I mean attack the

11    infidels and the apostates the Turks, the Turkish

12    police; if you are able to kill them then do so, if

13    you can burn their businesses or burn er, their

14    homes, I mean the government officials and police

15    cars ... to kill police individuals.  If you can do

16    that then do it.  If you cannot ..."

17          MS. MEEKS:  It doesn't matter if you are

18    eight or ten years old, or even four, I think.

19    That's what the defendant is telling this member who

20    presumably is a child.  It doesn't matter how young

21    you are.  Go out and fight.  Be a child soldier.

22    Die for jihad.  For this is the honor.

23          Has he promoted violence on behalf of the

24    Islamic State?  Absolutely.

25          In his taped interview that you saw, when

1    asked, interestingly enough:  "What do you know

2    about ISIS?"

3            The defendant responded:  "Make sure to

4    follow your children.  You don't want your children

5    messing with them."  In fact, he said:  "That's

6    because ISIS follows the blood path."

7            In Count Six, the defendant is charged

8    with lying to the question:  "Have you ever,

9    yourself, ever encouraged anyone to follow the

10   guidance of Abu Mohammad al-'Adnani, including his

11   instruction to kill infidels without consultation or

12   permission?"

13           In Government's Exhibit 166, he says:  "As

14   al-'Adnani said, kill them and do not ask for

15   anyone's fatwa.  Kill them and do not seek a fatwa

16   from anyone.'  This one killed them.  He killed

17   them, spilled their filthy blood and offered his

18   soul."

19           When the defendant told the FBI "No" to

20   this question, he lied.  You can look at

21   Government's Exhibit 140 in support of that.

22           In Count Seven, he's charged with lying

23   about the question:  "Have you ever promoted an act

24   of terrorism?"

25           In Government's Exhibit 198, he is

33

```
 1   promoting the stabbing in Minnesota that occurred at
 2   a shopping mall on behalf of ISIS, by a young
 3   Somalian man who stabbed nine people.  And when the
 4   defendant is asked:  "Have you ever praised an act
 5   of terrorism?"  And he said "No," consider
 6   Government's Exhibit 182.
 7             (Video clip played in Arabic:)
 8             "Okay then, what does Ibn-Baghdad say?
 9   'Killing slaughtering and burning, and today
10   trampling the Islamic State is becoming creative in
11   killing the enemies of God, the unbelievers --
12   France is trampled in silence.'  Good one, I swear
13   this is a good one.  I mean yes we want to laugh,
14   and we want, glory be to God to thank God."
15             THE COURT:  You have five minutes.
16             MS. MEEKS:  Thank you, Your Honor.
17             When you are considering this and you're
18   looking at the materiality, the law says that a
19   statement is material if it has a natural tendency
20   to influence or is capable of influencing a decision
21   of the FBI.
22             Now, this is important:  It is not
23   necessary to show that the FBI was, in fact, misled.
24   That's important.  The law does not require the FBI
25   to be ignorant.  It is perfectly permissible and
```

34

1    legal for the FBI to understand the subject, to have

2    committed a thorough investigation, to ask

3    questions, and still have that answer, when a lie be

4    material, just if it has a natural tendency to

5    influence the FBI.

6              So if believed, would that have influenced

7    the FBI?  And in a counterterrorism investigation,

8    all leads are pursued.  If the defendant had told

9    the truth and said "yes" to these questions, that

10   would have led to additional questions.  That would

11   have led to additional parts of the investigation.

12   These questions and these answers are material.

13             You will hear that lying is a part of

14   tradecraft; not here, but we have heard it's a part

15   of tradecraft.  That the defendant took means to

16   perform operational security.  He had squirreled

17   away SIM cards.  He cleared his phones of any social

18   media when he went to travel.

19             You heard in Government's Exhibits 188,

20   93, and 216 about how to operate under a tradecraft,

21   about what you should do to protect your phone, what

22   networks you should be on or not be on and how

23   everyone puts their lives in danger on this channel

24   as stated by Ibn Dawla.  So tradecraft is an

25   important part.

```
 1              And then on March 5th, 2017, when the
 2    defendant attempted to leave Dallas for Jordan, we
 3    know from speaking to Dr. Vidino that Jordan is a
 4    crossing point into Syria.  Although not most widely
 5    used, it is used by people with familiarity in that
 6    country.
 7              The defendant closed his store.  He
 8    brought his birth certificate with him.  He brought
 9    $6,000 in U.S. cash.  He stopped using his Zello
10    account.  He shaved his beard, changing his
11    appearance.  The defendant was not just talking, he
12    was recruiting.
13              And we also heard from FBI Linguist Ayda
14    Hussein, who is of Palestinian descent, a native
15    Arabic speaker who understands the nuances and the
16    inflections of the Arabic language.  And when asked
17    if the defendant ever, after listening to all these
18    hours of audio, if he ever sounded like he was
19    joking, she said, "No, he was very serious."
20              ISIS is still a threat.  The First
21    Amendment, by the way, does not provide a defense to
22    a criminal charge simply because a person uses his
23    associations, beliefs, or words to carry out illegal
24    activity.
25              Stated another way:  If a defendant's
```

1   speech, expression, or association were made with

2   the intent to knowingly provide material support or

3   resources to ISIS as described in the indictment, as

4   is done in this case, the First Amendment would not

5   provide a defense to that conduct.

6           Keep that in mind.  It's not talk.  It's

7   recruitment.

8           THE COURT:  That's time, but go ahead.

9           MS. MEEKS:  May I continue, Your Honor?

10          THE COURT:  Yes.

11          MS. MEEKS:  One more.

12          On Government's Exhibit 290, please also

13  remember that when the attack in Orlando occurred,

14  the defendant said:  "The Islamic Caliphate State

15  executed this operation in the State of Orlando

16  Florida, in the United States and killed 50 or more.

17  This is the thumbprint of the Islamic State.  This

18  is the proof that I mean it is taking revenge on

19  America and that America is its enemy."

20          Dr. Vidino said, "When you're a member of

21  ISIS, ISIS's enemy is your enemy."

22          Thank you.

23          THE COURT:  Thank you.

24          Mr. Whalen.

25          You will have about 14 minutes,

1    Ms. Martin.

2            Go ahead.

3            MR. WHALEN:  May it please the Court,

4    Counsel.

5            THE COURT:  Mr. Whalen.

6            MR. WHALEN:  Good morning, Ladies and

7    Gentlemen.  In a bit, the judge is going to read to

8    you the jury charge, and that becomes your roadmap

9    on how you are to distill and interpret this

10   evidence.  And I think it's going to be very

11   important that you follow these instructions.  I

12   will go through some of the instructions we

13   anticipate the judge will read to you, because we

14   think it's extremely important that you focus on

15   that.

16           Because my concern is, while you have

17   heard things, as I said in opening, are outrageous,

18   unconscionable to hear, it doesn't make them

19   criminal.  I think when you listen to the facts,

20   you've heard the facts and apply the law to it, I

21   believe you will have a reasonable doubt as to his

22   guilt and find him not guilty.

23           And so I want to go through what I think

24   the evidence shows in the law.  And it may take a

25   bit to do it, because there's a lot of information.

```
 1   I mean, we were only here a week, but there's a lot
 2   to digest.  You heard a lot of things over and over
 3   again.  But what does it all mean?
 4          The first thing I want to talk about is, I
 5   want to talk about the false statement counts first.
 6   Because I think that leads into some other things.
 7   So what you have is the start of the investigation.
 8   It started on April of 2016.  And you heard Agent
 9   Golomb say that they identified Mr. Rahim within two
10   weeks.  They knew who that was, and it was
11   Mr. Rahim.
12          And then after that, they set up a pole
13   camera at his business, at his home, where they had
14   an IP address, and they watched him 24/7 for almost
15   a year.  And in that time, they've got hours,
16   hundreds of hours of chats on the chat room that
17   they listened to.  They used subpoenas.  They used
18   search warrants.  They used physical surveillance
19   with people.  So they are ready for him, and they
20   even know he's going to fly.  They were made aware
21   that he made reservations.  And so they are ready
22   for him to show up on March 5th, 2017, approximately
23   11 months.
24          So they knew who he was.  They had
25   coordinated with the Italian authorities.  They knew
```

1    it was his voice on those Zello chat rooms.  They

2    had translated them from Arabic to English.  They

3    knew everything he had said and done in that past

4    year.  Then he arrives, and he believes he's going

5    to get on that plane, and he's not.  They know he's

6    not.  And so the whole interaction between Mr. Rahim

7    and the FBI started with a lie.  "Let us help you

8    try to figure this out so you can board that plane."

9              Now, I know they are going to say it's an

10   investigative technique and they are allowed to use

11   it, and that's true.  But their whole interaction

12   started with a lie with him that day.

13             They already had search warrants to search

14   his luggage.  They already had search warrants to

15   look at his phone.  They had a SWAT team.  They had

16   other surveillance.  They had left nothing to

17   chance.  And they meet Mr. Rahim.  He agrees to

18   answer questions, and he makes statements in there

19   that are inconsistent with what he said on those

20   chats.  That is true.

21             But the question becomes, were they

22   material?  And I said in opening, did they matter?

23   Because when we talk about materiality -- you heard

24   the definition -- it's material if it has a natural

25   tendency to influence or is capable of influencing a

40

```
 1    decision of the FBI.  Did you hear any testimony
 2    about anything, how it influenced their
 3    decision-making of what they did and how they did it
 4    or why they did it?  They already had done it.
 5    Actually, when you look at it if he lied about it,
 6    it even confirmed what they were trying to find out.
 7    They already knew what he had said.  It was not a
 8    mystery.  And whether he confirmed it or denied, it
 9    didn't matter.  So look at that and focus on that.
10    It's not just about he lied, it had to have
11    mattered.
12            And we went through all the different
13    things that he told when he talked in that room that
14    he told the truth about.  And he told the truth
15    about going to see his daughter in Jordan.  There's
16    no denying that.  There's no doubt about that.
17    That's why he was going.
18            So when you look at those counts, focus on
19    the materiality issue, because that's where I think
20    the focus should be, and I think you do have a
21    reasonable doubt of whether or not they were
22    material.  I don't think the evidence supports that.
23            And remember the burden of proof is on the
24    government.  They have to prove this case to you
25    beyond a reasonable doubt.  And as the charge will
```

1    say to you:  "The government has the burden of

2    proving the defendant guilty beyond a reasonable

3    doubt.  And if it fails to do so, you must acquit

4    the defendant."  That is the law, and that is your

5    obligation as jurors.

6              "While the government's burden of proof is

7    a strict or heavy burden, it's not necessary it be

8    proved beyond all possible doubt."  They have to

9    exclude any reasonable doubt.  "And a reasonable

10   doubt is a doubt based upon reason and common sense

11   after careful and impartial consideration of all the

12   evidence in the case.  And proof beyond a reasonable

13   doubt, therefore, is proof of such a convincing

14   character that you would be willing to rely and act

15   upon it without hesitation in the most important of

16   your own affairs."  It requires you to do it

17   carefully, conscientiously and not emotionally.

18             So let's talk about Count One and

19   Count Two, because I think that's where most of the

20   focus came.

21             So we start with Count One, the conspiracy

22   count.  So what was the agreement?  What did they

23   agree to do exactly?  You have a group of people,

24   like-minded, who, as Dr. Vidino said, are fans of

25   ISIS or supporters of ISIS, talking to one another

```
 1   about their own views and opinions on a social media
 2   platform.
 3            And yeah, they agreed to the rules of the
 4   channel, and somehow that makes it sophisticated.
 5   But if you add structure to, "Hey, we're going to
 6   put together a channel and we're going to have rules
 7   and people have certain roles," does that somehow
 8   make it sophisticated or just -- it's just
 9   organized.  "We're not going to talk over each
10   other.  Everybody is going to have an opportunity to
11   speak or limit it or however we want to decide.
12   Those are the rules.  If you want to join the chat
13   room, you can join the chat room.  Those are the
14   rules."  Somehow that becomes sophisticated.
15            And what do they talk about on there?
16   They talked about stuff that, as Dr. Vidino said,
17   nothing new, they were just parroting back what
18   other people said.  They were just parroting things
19   back and saying the same thing over and over again.
20            But it's also interesting as far as the
21   conspiracy about what their agreement was, because
22   they talk, but in my opinion they don't do.  Because
23   you have Mr. Ibn Dawla, the Italian fellow, talking
24   about bomb making.  "We're going to make bombs, and
25   I know about making bombs, and this is what we are
```

1    going to do."  And they watched him for a lengthy

2    period of time and listened to what he had to say.

3    And when they arrested him, the question I asked

4    was, "Did you find any bomb making materials?  Did

5    you find anything related to bombs?"

6            "No."

7            Don't you think if that was the intent, we

8    would have found receipts, internet searches, bomb

9    making materials?  We find nothing.

10           And so I think it's important -- and it's

11   important that you have the instruction in the

12   conspiracy count that says:  "A mere presence at the

13   scene of an event, even with knowledge that a crime

14   is being committed or the mere fact that certain

15   persons may have associated with each other and may

16   have assembled together and discussed common aims

17   and interests, does not necessarily establish proof

18   of the existence of the conspiracy.  Also, a person

19   who has no knowledge of conspiracy but happens to

20   act in a way that advances some purpose of a

21   conspiracy does not thereby become a conspirator."

22           There's a reason why we have that.

23   Because if they are all just a bunch of supporters

24   getting together and talking about things that are

25   outrageous and offensive, that's not a conspiracy.

44

 1   So you have to look at that.  It's easy to just say,

 2   "Well, they talked about setting up the channel,

 3   therefore that was the agreement."  But what did

 4   they really agree to?

 5            And the other thing that you're going to

 6   have in the jury charge as it relates to material

 7   support and resources, is:  "Any service refers to

 8   services provided to a foreign terrorist

 9   organization.  Service, for example, can mean an act

10   done for the benefit or at the command of another.

11   Independently advocating for a cause is not

12   providing a service to a foreign terrorist

13   organization."

14            So when we talk about services, and

15   they're going to say this thing was to recruit

16   people or set up this chat, are they acting on

17   behalf of ISIS, at their direction or control?  Or

18   are they doing it independently?

19            And I think it's important to look at and

20   consider that through this all, all this talk that

21   they did about, we're going to go to the battlefield

22   or commit jihad or do those things, did one

23   person -- is there any evidence to suggest that

24   anybody from this channel did any such thing?

25   Because if their goal is to actively recruit people,

1  where is the evidence that they did it and there is

2  a result.  Because words are words, actions are

3  actions.  So you have a lot of words, but not a lot

4  of actions.

5          And so the other part of it comes down to

6  personnel.  Do they provide personnel?  And you have

7  a lengthy definition in your instructions, and I'm

8  going to read it to you.  It provides that:  "No

9  person may be prosecuted under this section in

10  connection with the term 'personnel' unless that

11  person has knowingly provided, attempted to provide,

12  or conspired to provide a foreign terrorist

13  organization with one or more individuals who may

14  include himself to work under the terrorist

15  organization's direction or control or to organize,

16  manage, supervise or otherwise direct the operation

17  of that organization.  Individuals who act entirely

18  independently of the foreign terrorist organization

19  to advance its goals or objectives, shall not be

20  considered to be working under the foreign terrorist

21  organization's direction and control."

22          So when it comes to personnel, you heard

23  when we talk about the attack in Nice, in Orlando,

24  Dr. Vidino said these were not done at the direction

25  of ISIS, these were done by people who supported

ISIS.  So I think when you look at that and focus on
that and listen to these instructions, that leads to
reasonable doubt.

Now, they want to say or infer or want you
to infer that when he went to Jordan, he was
providing himself to the organization.  And really,
when you get right down to it, it's just rank
speculation.  He's going to see his daughter.  And
they talk about how he shaved his beard, to make you
think that somehow he changed his appearance.  But
would it make sense to shave your beard and be clean
shaven for your daughter?  And if he really changed
his appearance, we saw his passport.  Full beard,
driver's license, full beard.  And he brought his
birth certificate with him and his passport and his
driver's license.  I'd rather be overprepared with
proof of identity if you lost your passport in a
foreign country.

He had a return ticket.  He had seen her
before.  This was normal.  It was not some movement
on his part to go join the Caliphate.  As much as
they want you to believe that, they haven't proven
that to you.  It is not a reasonable inference.

Yes, he has cash.  He's gone for two
months.  He's got to eat.  He's got to live for two

 1   months while he's spending time with his daughter.

 2   So they want to suggest that all these things means

 3   he's going to travel for jihad, but he's not.  They

 4   haven't disputed he's going to see his daughter.

 5   He's going to see his daughter, period.  So when it

 6   comes to services and personnel, they haven't proven

 7   that to you.

 8          Then we get to the issue of attempt, which

 9   I find somewhat unperplexed by it, because it

10   doesn't make sense to me.  Because you have the

11   attempt, he attempted to provide material support to

12   ISIS, and so the attempt is -- there's -- and I'm

13   going to get to this.  But there are three different

14   ways you will be instructed on they can prove he

15   provided material support or services.

16          The first you provide material support by

17   trying to recruit for ISIS; to provide personnel;

18   and providing administrative services, which is the

19   chat room.  So when you get to this attempted

20   language, I'm rather confused by it, because it says

21   that he -- it amounts to more than mere preparation.

22   So the government's theory, the way I hear it, is

23   that he set up this chat room for that purpose and

24   talked on it.  So did he do it or not?  Or are we

25   just going to say he attempted to do it?  That

1    doesn't make any sense to me.

2           And we're going to say that he attempted

3    to recruit people.  Well, they have to say he

4    attempted to recruit people because they can't show

5    you anybody he recruited.  But did he really recruit

6    anybody or attempt to recruit anybody?  And finally,

7    when you get to personnel, he didn't attempt to go

8    anywhere.  He attempted to go see his daughter.  But

9    he didn't attempt to go provide personnel.

10           And so now we talk about this section on

11   freedom of speech, and I think it's a very important

12   section.  Because we have heard things that we don't

13   like, but in this country we have a right to say

14   them.  And if you go to any social media website,

15   you can find them.  And in preparing for this case,

16   people have lots of opinions about Orlando.  In

17   particular, a Christian pastor from California, and

18   he -- this is what he said:  "In America, you no

19   longer are allowed to have an opinion that goes

20   against mainstream society."

21           MS. MEEKS:  Objection, Your Honor, facts

22   not in evidence.

23           THE COURT:  Overruled.  This is argument.

24           MR. WHALEN:  "As Christians, we should not

25   be taking a sympathetic approach to these types of

49

 1  news and saying, this was a tragedy, this is
 2  something we are sad about.  We should be mourning
 3  these people.  The Bible teaches that they are all
 4  predators.  That all the Bible says about them, they
 5  are wicked, they are vial, they are predators, and
 6  God says they deserve the death penalty for what
 7  they do.  I'm not saying we should do that, but when
 8  you find a sodomite, put them to death.  And we're
 9  not -- he's not promoting -- he says he's not
10  promoting violence, but we're saying this.  If we
11  lived in a righteous nation with a righteous
12  government, then the government should be taking
13  them.  There's no tragedy.  I wish the government
14  would round them all up, put them up against a
15  firing wall, put a firing squad in front of them and
16  blow their brains out."
17          By God, how offensive is that.  Saying it
18  under the color of Christianity.  But in this
19  country, he has a right to say it.  And whether
20  you're believing in the Bible or the Quran, you have
21  a right to speak your mind and your beliefs.  And if
22  you believe that and embrace that, that is a defense
23  to the things he said on that chat room.  This is
24  what the case is all about.  This is about our
25  rights as citizens to say what we want to say.  And

```
 1   if we are accused by our government --
 2              THE COURT:  No, no, no.  You're going too
 3   far now.  Go back to your argument, but not that.
 4              MR. WHALEN:  Okay.  You have a right to
 5   have a trial.
 6              THE COURT:  No, no.  Talk about something
 7   else.
 8              MR. WHALEN:  Okay.  And so I think the
 9   other thing you need to look at, too, is there's
10   testimony in here about he was revered on the chat
11   room, he was Sheikh, he was looked up to.  People
12   join groups to feel good about themselves, to look
13   for validation.  Was that what he was looking for?
14              So when you look at all of this and look
15   at the law that you have, you will have a reasonable
16   doubt, because when you look at everything they have
17   for the whole year that he could have been waging
18   jihad, all he ever did was get on a flight to see
19   his daughter.
20              And I think it's also interesting, too,
21   that the burden of proof in this case is beyond a
22   reasonable doubt.  And you heard Agent Golomb say
23   that if he had not answered those questions and
24   chose not to answer those questions, he did not have
25   probable cause to arrest him.  The evidence is no
```

1    different before March 5th or after March 5th, 2017.

2    So if he didn't have probable cause to arrest him

3    then, it's certainly not evidence of proof beyond a

4    reasonable doubt.

5            And so when you go back there and follow

6    these instructions as given to you, there is only

7    one true verdict in this case, and that's not guilty

8    on all counts, because they haven't proven it to you

9    beyond a reasonable doubt.  He had a right to say

10   what he did.  Thank you.

11           THE COURT:  Thank you, Mr. Whalen.

12           Ms. Martin, you have about 14 minutes.

13           MS. MARTIN:  Thank you, Your Honor.

14           I tell you what you don't have the right

15   to do, and that's to recruit for ISIS.  That's

16   against the law.  It's in your instructions.  It's

17   the law, the defendant did it, and he's guilty of

18   it.

19           Mr. Whalen said, what is the agreement?

20   The agreement is to support ISIS.  The name of the

21   channel is the State of the Islamic Caliphate.

22   Every single day all they talk about is killing

23   people, mobilizing for jihad, slaughtering people in

24   their own lands, praising people that died in

25   Orlando, praising people that died in Nice, France,

1  praising people that died in Turkey.  That's all

2  they do.  All they promote is hate, all they promote

3  is murder.  That's what that channel was for.  And

4  that's not legal.  That's not First Amendment.

5  That's recruiting for a foreign terrorist

6  organization.

7          Now, Mr. Whalen also said the defendant

8  said -- he merely just said stuff, and nobody -- we

9  can't even show that anyone ever even mobilized.

10 The defendant, himself, brags about how people

11 mobilized.  You have people on this channel saying

12 they are in Aleppo, Syria, they are in ar-Raqqah,

13 Syria.  They have mobilized.  They are talking about

14 it, they are bragging about it.  He's saying, "Don't

15 underestimate the channel, it's wonderful, we have

16 people mobilizing all the time.  And they came on

17 this channel, and they didn't really know what ISIS

18 was about.  And we taught them and directed them to

19 the A'maq News agency, the news agency for ISIS."

20 That's exactly what they were doing.  The defendant

21 is telling people on the channel that they have

22 mobilized.  He's bragging about it.

23         Now, Mr. Whalen also wanted to talk to you

24 about direction and control.  And he called your

25 attention to the charge.  And on page 13, you will

53

```
1    see that it says at the top of the page, and that's
2    page 13 of your jury charge:  "In connection with
3    the term 'personnel,' unless the person was
4    knowingly provided, attempted to provide or
5    conspired to provide a foreign terrorist
6    organization with one or more individuals."  That is
7    the only way that the government charged this crime
8    to be committed that relates to direction and
9    control.  The recruiting, the running the admin,
10   direction and control is not required for that.
11   Direction and control only relates to personnel.
12   Mr. Whalen said it was personnel and services, and
13   that's just not right.  So read your charge.  It
14   only relates to personnel.
15           And it says if you act independently with
16   respect to personnel, then it's not a violation.
17   But was this independent?  Of course it wasn't
18   independent?  There are 10,000 users on this
19   channel.  He's not acting independently.  He's
20   teaming up in Media Committee and Dialogue Committee
21   and Coordination Committee.  He's not acting
22   independently.  He's providing himself every day for
23   ISIS to run this channel and to recruit for them.
24           You will notice on page 12 of your charge,
25   about in the middle of the page it says:  "Any
```

1    service refers to services provided to a foreign

2    terrorist organization.  Service, for example, can

3    mean an act done for the benefit of or at the

4    command of another."  An act done for the benefit

5    of.  Everything this man did was for the benefit of

6    ISIS.  Everything.  That was his whole life.  That's

7    all he cared about.  He talked about it all day

8    every day, "for the benefit of."

9            Mr. Whalen wanted to talk to you about the

10   burden of proof.  The burden of proof beyond a

11   reasonable doubt asks you to use your reason and

12   common sense.  What does your reason and common

13   sense tell you here?  Just talk?  No way.  He was

14   ordering people specifically to kill others.  The

15   person in Manchester, he gave a specific order for

16   him to kill other people.  He repeatedly called for

17   people to mobilize for jihad; repeatedly.  And

18   that's also what he lied about in Count Three.

19           And you will see in Government's Exhibit

20   152, page 4, he just repeatedly talks about

21   mobilizing for jihad.  He was giving fatwas,

22   religious orders, to kill and to commit lone wolf

23   attacks.  He was using all manner possible to

24   recruit:  guilt; God's requirements; rewards to your

25   family; a place in paradise.  That's not just talk.

55

```
 1   That's recruiting.  That's material support to ISIS.
 2            Just talk?  He took over 2,000 actions as
 3   a moderator/administrator on that channel.  2,000.
 4   He took it on an ISIS channel.  That's
 5   administrative services.  That's not just talk.
 6   It's material support to ISIS.
 7            Said Rahim used seven anonymous monikers
 8   to run on this channel.  Monikers like all way isis;
 9   hola isis; safer-alshahadah, which means ambassador
10   of martyrdom; trip W amojahed, which means a trip
11   with Mujahidin.  Anonymous activity on the internet
12   allows these people to promote their terrorism and
13   organize their terrorism in a safe place, meaning
14   they can get to more people without being detected
15   by law enforcement.  That's the whole reason they do
16   it.  If it's just talk, then why is it anonymous?
17   Because it's not just talk.  He takes steps for
18   operational security, tradecraft, and he grows more
19   sophisticated as the case progressed.
20            Finally, at the end, he moved to a moniker
21   and only used cell phone data.  He never logged into
22   a WiFi where he could be tied to a hard line.
23   That's tradecraft.  That's someone who knows he's
24   committing crime because he knows he's recruiting
25   for a foreign terrorist organization.  And he's
```

56

1    doing it in Dallas, Texas and Richardson, Texas.  Is

2    that just talk?  No.  That's material support for

3    ISIS.

4           Said Rahim went off Zello, which he had

5    been on nonstop for over two years.  He bought a

6    ticket to Jordan in the Levant bordering Syria.  He

7    shaved his beard.  He went to the airport with

8    $6,000 in cash on him, wiped his phone of social

9    media.  He had three foreign SIM cards squirreled

10   away, secreted away in a jewelry box in his luggage,

11   and he had his birth certificate.  He meant to stay.

12   And then he lied.  And he lied over and over and

13   over.

14           If it's just talk, why lie?  Why pretend

15   that you aren't even sure you're familiar with some

16   of the questions the FBI is asking about different

17   terrorist organizations?  If it's just talk, why are

18   you lying about that?  Why pretend you don't even

19   know about these attacks when you are praising them

20   and glorifying them over and over and over?  The

21   slaughter of Americans in Orlando, Florida, and in

22   Minnesota.  The killing of people on the Promenade

23   in Nice, France.  The killing of people in Turkey

24   who were celebrating New Year's Eve  He's praising

25   it.  It makes him so happy that someone from ISIS

57

1    murdered all these people.  And then to act like you
2    are not even 100 percent sure what the FBI agent is
3    talking about when he's asking you questions?  If
4    that's okay, why are you lying?  That's not talk.
5    That's material support.
6              Mr. Whalen also talked about direction and
7    control.  The State of the Islamic Caliphate was the
8    name of the channel.  There were 72 documents
9    directing them on ways to commit terrorist acts.
10              One of them that you saw pictures of --
11    it's all in Arabic, so you can't read it -- had
12    Osama bin Laden on it, al-Zacari on it, al-Baghdadi
13    on it and al-'Adnani on it.  They used their
14    language over and over.  This defendant uses
15    al-'Adnani's language over and over.  They are -- he
16    is under the direction and control.  You heard
17    Dr. Vidino say, ISIS pushes out the message, that's
18    the control.  They push out the message in a broader
19    sense, and then this defendant acted upon it.
20              Was Said Rahim ever getting on that plane?
21    Of course he wasn't.  Of course not.  Did the FBI
22    pretend to want to help him in order to interview
23    him in order to further this investigation?
24    Absolutely.  You bet they did.  That's their job,
25    and they did it.

58

```
1              THE COURT:  Five minutes.
2              MS. MARTIN:  And they did it well.  The
3    law allows them to pretend to be helping him in
4    order to do that interview.  It's completely
5    appropriate.  There's nothing wrong with it.  And
6    those lies were material.
7              Judge Boyle is going to instruct you on
8    page 16 of the jury charge about materiality.  And
9    it says:  "A statement is material if it has a
10   natural tendency to influence or is capable of
11   influencing a decision of the FBI."  Not did it, not
12   did it matter on that day, was it capable of doing
13   it.
14             And the next sentence says:  "it is not
15   necessary to show that the FBI was, in fact,
16   misled."  That's the law.  It's not necessary to
17   show that they believed him when he said it.
18             Are the statements -- do they tend to be
19   able to influence?  When a terrorist or some subject
20   of terrorism says they didn't -- haven't ever
21   promoted an act of terrorism, Agent Golomb testified
22   that's important to the FBI.  When someone says they
23   didn't promote an act of violence, that's important
24   to the FBI.  When they said they've never been a
25   supporter of ISIS, that is absolutely important to
```

1    the FBI.  When they said they have never promoted or

2    followed or spoken al-'Adnani's instructions to

3    others to kill, that's important to the FBI.  And

4    whether or not they have praised over and over and

5    over and over again the murders of people on behalf

6    of ISIS, that's important to the FBI.  Those

7    statements were material.  There's no question he

8    lied about it, but they were material.

9              Said Rahim's allegiance, loyalty, his love

10   is for ISIS.  There is passion.  And he passionately

11   ran a social media platform channel to further that

12   mission and he passionately recruited for them.  He

13   recruited because they need recruits.  ISIS's role

14   is convert, pay the jizyah, pay the tax or die.  The

15   greatest threat to ISIS is democracy, and they are

16   violent and vigilant in attacking it.

17              (Audio played; in Arabic.)

18              MS. MARTIN:  In any area where Christians

19   exist, they are targets.  Or a Jew or atheist or

20   crusader or where a Christian missionary preacher

21   is, all of those are legal targets of the Islamic

22   Caliphate State according to Said Rahim.

23              No, Said Rahim, they are not.  Not in the

24   United States of America, not in the Northern

25   District of Texas, and not in this courtroom.  You

```
 1   tell him so.  You find him guilty on all counts.
 2             THE COURT:  Thank you, Ms. Martin.
 3             Okay, Ladies and Gentlemen, does anyone
 4   need a bathroom break?
 5             Okay.  We're going to take a bathroom
 6   break.  Remember it's not time to talk about the
 7   case.  It will be in a minute, but you will hear my
 8   charge first and then go back and start
 9   deliberating.  Go ahead.  Five minutes.
10             (Jury exits courtroom.)
11             THE COURT:  Please make sure you both --
12   I'm going to make you put on the record that you
13   have looked at all the exhibit, Mr. Whalen has
14   looked at all the defense and the government,
15   Ms. Martin and Ms. Meeks, have looked at the defense
16   and government exhibits before they go back there.
17             Let's take a five-minute break.
18             (Recess taken.)
19             THE COURT:  We're going to pass out the
20   charges to you.
21             I'm going to read from the original.  This
22   is the original.  You have copies, and you can take
23   that back with you.  But the original is the one
24   that the foreperson will sign and stick back in here
25   and seal and give to the court security officer who,
```

```
 1    in turn, will give it to me.  Just so you know, this
 2    is the one you will look for.  It has my signature
 3    in blue on the back.
 4                      Jury Instructions
 5             In any jury trial, there are, in effect,
 6    two judges.  I am one of the judges; the other is
 7    the jury.  It is my duty to preside over the trial
 8    and to decide what evidence is proper for your
 9    consideration.  It is also my duty at the end of the
10    trial to explain to you the rules of law that you
11    must follow and apply in arriving at your verdict.
12             First, I will give you some general
13    instructions which apply in every case, for example,
14    the instructions about the burden of proof and how
15    to judge the believability of witnesses.  Then I
16    will give you some specific rules of law about this
17    particular case.  And finally I will explain to you
18    the procedures you should follow in your
19    deliberations.
20    General Instructions:
21                 Duty to Follow Instructions
22             You, as jurors, are the judges of the
23    facts.  But in determining what actually happened --
24    that is, in reaching your decision as to the
25    facts -- it is your sworn duty to follow all the
```

1    rules as I have explained them to you.

2              You have no right to disregard or give

3    special attention to any one instruction, or to

4    question the wisdom or correctness any of rule of

5    law as I may state it to you.  You must not

6    substitute or follow your own notion or opinion as

7    to what the law is or ought to be.  It is your duty

8    to apply the law as I explain it to you, regardless

9    of the consequences.

10             It is also your duty to base your verdict

11   solely upon the evidence, without prejudice or

12   sympathy.  That was the promise and oath you made

13   before you were accepted by the parties as jurors,

14   and they have the right to expect nothing less.

15                       Note-Taking

16             If you have taken notes, your notes should

17   be used only as memory aids.  You should not give

18   your notes any precedence over your independent

19   recollection of the evidence.  If you did not take

20   notes, you should rely on your own independent

21   recollection of the proceedings, and you should not

22   be unduly influenced by the notes of other jurors.

23             Notes are not entitled to any greater

24   weight than the memory or impression of each juror

25   as to what the testimony may have been.  Whether you

```
 1    have taken notes or not, each of you must form and

 2    express your own opinion as to the facts of the

 3    case.

 4         Presumption of Innocence, Burden of Proof and

 5                      Reasonable Doubt

 6              The second superseding indictment or

 7    formal charge against the defendant is not evidence

 8    of guilt.  Indeed, a defendant is presumed by law to

 9    be innocent.  The defendant begins with a clean

10    slate.  The law does not require a defendant to

11    prove his innocence or produce any evidence at all.

12              The government has the burden of proving

13    the defendant guilty beyond a reasonable doubt, and

14    if it fails to do so, you must acquit the defendant.

15    While the government's burden of proof is a strict

16    or heavy burden, it is not necessary that the

17    defendant's guilt be proved beyond all possible

18    doubt.  It is only required that the government's

19    proof exclude any "reasonable doubt" concerning the

20    defendant's guilt.

21              A "reasonable doubt" is a doubt based upon

22    reason and common sense after careful and impartial

23    consideration of all the evidence in the case.

24    Proof beyond a reasonable doubt, therefore, is proof

25    of such a convincing character that you would be
```

1    willing to rely and act upon it without hesitation

2    in the most important of your own affairs.

3         Evidence - Excluding What is Not Evidence

4              As I told you earlier, it is your duty to

5    determine the facts.  To do so, you must consider

6    only the evidence presented during the trial.

7    Evidence is the sworn testimony of the witnesses,

8    including stipulations and exhibits.  The questions,

9    statements, objections and arguments made by the

10   lawyers are not evidence.

11             The function of the lawyers is to point

12   out those things that are most significant or most

13   helpful to their side of the case, and in so doing

14   to call your attention to certain facts or

15   inferences that might otherwise escape your notice.

16   In the final analysis, however, it is your own

17   recollection and interpretation of the evidence that

18   controls in the case.  What the lawyers say is not

19   binding upon you.

20             During the trial, I sustained objections

21   to certain questions and exhibits.  You must

22   disregard those questions and exhibits entirely.  Do

23   not speculate as to what the witness would have said

24   if permitted to answer the question, or as to the

25   contents of an exhibit.  Also -- just a minute.

1    Also, certain testimony -- also in the final

2    analysis -- the function of the lawyers is to point

3    out those things that are most significant to their

4    side of the case, and in so doing to call your

5    attention to certain facts or inferences that might

6    otherwise escape your notice.  In the final

7    analysis, however, it is your own recollection and

8    interpretation of the evidence that controls in the

9    case.  What the lawyers say is not binding upon you.

10        During the trial, I sustained objections

11   to certain questions and exhibits.  You must

12   disregard those questions and exhibits entirely.  Do

13   not speculate as to what the witness would have said

14   if permitted to answer the question, or as to the

15   contents of an exhibit.  Also, certain testimony or

16   other evidence has been ordered removed from the

17   record and you have been instructed to disregard

18   this evidence.  Do not consider any testimony or any

19   evidence that has been removed in reaching your

20   decision.  Your verdict must be based solely on the

21   legally admissible evidence and testimony.

22        Also, do not assume from anything that I

23   may have done or said during the trial that I have

24   any opinion concerning any of the issues in the

25   case.  Except for the instructions to you on the

66

```
 1    law, you should disregard anything I may have said
 2    during the trial in arriving at your verdict.
 3      Evidence - Inferences - Direct and Circumstantial
 4            In considering the evidence, you are
 5    permitted to draw such reasonable inferences from
 6    the testimony and exhibits as you feel are justified
 7    in light of common experience.  In other words, you
 8    may make deductions and reach conclusions that
 9    reason and common sense lead you to draw from the
10    facts which have been established by the evidence.
11            Do not be concerned about whether evidence
12    is direct evidence or circumstantial evidence.  You
13    should consider and weigh all of the evidence that
14    was presented to you.
15            "Direct evidence" is the testimony of one
16    who asserts actual knowledge of fact, such as an
17    eyewitness.  "Circumstantial evidence" is proof of a
18    chain of facts and circumstances indicating that
19    something is or is not a fact.
20            The law makes no distinction between the
21    weight to be given to either direct or
22    circumstantial evidence.  But the law requires that
23    you, after weighing all of the evidence, whether
24    direct or circumstantial, be convinced of the guilt
25    of the defendant beyond a reasonable doubt before
```

1    you can find him guilty.

2                    Credibility of Witnesses

3            I remind you that it is your job to decide

4    whether the government has proved the guilt of the

5    defendant beyond a reasonable doubt.  In doing so,

6    you must consider all of the evidence.  This does

7    not mean, however, that you must accept all of the

8    evidence as true or correct.

9            You are the sole judges of the credibility

10   or believability of each witness and the weight to

11   be given to the witness's testimony.  An important

12   part of your job will be making judgments about the

13   testimony of the witnesses.  You should decide

14   whether you believe all, some, part, or none of what

15   each person had to say and how important that

16   testimony was.  In making that decision, I suggest

17   you ask yourself a few questions:  Did the witness

18   impress you as honest?  Did the witness have any

19   particular reason not to tell the truth?  Did the

20   witness have a personal interest in the outcome of

21   the case?  Did the witness have any relationship

22   with either the government or the defense?  Did the

23   witness seem to have a good memory?  Did the witness

24   clearly see or hear things about which he testified?

25   Did the witness have the opportunity and ability to

1    understand the questions clearly and answer them

2    directly?  Did the witness's testimony differ from

3    the testimony of other witnesses?  These are a few

4    of the considerations that will help you to

5    determine the accuracy of what each witness said.

6            Your job is to think about the testimony

7    of each witness you have heard and decide how much

8    you believe of what each witness had to say.  In

9    making up your mind and reaching a verdict, do not

10   make any decisions simply because there were more

11   witnesses on one side than the other.  Do not reach

12   a conclusion on a particular point because there

13   were more witnesses testifying for one side on that

14   point.  You will always bear in mind that the law

15   never imposes upon the defendant in a criminal case

16   the burden or duty of calling any witnesses or

17   producing any evidence.

18           I remind you that the defendant has an

19   absolute right not to testify, and the exercise of

20   that right may not be considered by you as evidence

21   of guilt or in any way adversely to that defendant,

22   but merely as an exercise of a protected

23   constitutional right.

24           Expert Opinion Testimony

25           During the trial, you heard the testimony

1    of Dr. Lorenzo Vidino and FBI Linguist Ayda Hussein,

2    who expressed opinions concerning:  The background

3    and operation of ISIS; the translations from Arabic

4    to English.  If scientific, technical or other

5    specialized knowledge might assist the jury in

6    understanding the evidence or determining a fact in

7    issue, a witness qualified by knowledge, skill,

8    experience, training or education may testify and

9    state an opinion concerning all such matters.

10          Merely because such a witness has

11   expressed an opinion does not mean, however, that

12   you must accept this opinion.  You should judge such

13   testimony like any other testimony.  You may accept

14   it or reject it or give it as much weight as you

15   think it deserves considering the witness's

16   education, experience, the soundness of the reasons

17   given for the opinion, and all other evidence in the

18   case.

19                     On or About

20          You will note that the second superseding

21   indictment charges that the offense was committed on

22   or about or in or about specified dates.  The

23   government does not have to prove that the crime was

24   committed on those exact dates, so long as the

25   government proves beyond a reasonable doubt that the

1    defendant committed the crime on a date reasonably

2    near October 2014 through March 2017, the dates

3    stated in the second superseding indictment.

4            Caution - Consider Only Crime Charged

5            You are here to decide whether the

6    government has proved beyond a reasonable doubt that

7    the defendant is guilty of the crimes charged.  The

8    defendant is not on trial for any act, conduct, or

9    offense not alleged in the second superseding

10   indictment.  Neither are you called upon to return a

11   verdict as to the guilt of any other person or

12   persons not on trial as a defendant in this case,

13   except as you are otherwise instructed.

14           Caution - Punishment.

15           If the defendant is found guilty, it will

16   be my duty to decide what the punishment will be.

17   You should not be concerned with punishment in any

18   way.  It should not enter your consideration or

19   discussion.

20           Single defendant - Multiple counts.

21           A separate crime is charged in each count

22   of the second superseding indictment.  Each count

23   and the evidence pertaining to it, should be

24   considered separately.  The fact that you may find

25   the defendant guilty or not guilty as to one of the

1    crimes charged should not control your verdict on

2    the other.

3            Cautionary Instruction - Transcripts

4            Exhibit 65 has been identified as a

5    typewritten transcript of the oral conversation

6    between the defendant and federal agents, which can

7    be heard on the video recording received in evidence

8    as Government's Exhibit 64.  The transcript also

9    purports to identify the speakers engaged in such

10   conversations.

11           I have admitted the transcript for the

12   limited and secondary purpose of aiding you in

13   following the content of the conversations as you

14   listen to the tape recording and also to aid you in

15   identifying the speakers.

16           You are specifically instructed that

17   whether the transcript correctly or incorrectly

18   reflects the content of the conversations or the

19   identity of the speakers is entirely for you to

20   determine based upon your own evaluation of the

21   evidence you have heard concerning the preparation

22   of the transcript, and from your own examination of

23   the transcript in relation to your hearing of the

24   video recording itself as the primary evidence of

25   its own contents; and, if you should determine that

1   the transcript is in any way incorrect or
2   unreliable, you should disregard it to that extent.
3   It is what you hear on the video that is evidence,
4   not the transcript.
5        Transcript of Foreign Language - Tape Recorded
6                         Conversation
7             Among the exhibits admitted during the
8   trial were recordings that contained conversations
9   in the Arabic language.  You were also provided
10  English transcripts of those conversations.  Those
11  transcripts were provided to you by the government
12  so that you can consider the content of the
13  conversations on the recordings.  Whether a
14  transcript is an accurate translation, in whole or
15  in part, is for you to decide.  You should not rely
16  in any way upon knowledge you may have of the
17  language spoken on the recording; your consideration
18  of the transcripts should be based on the evidence
19  introduced in the trial.
20            In considering whether the transcripts
21  accurately describe the meaning of a conversation,
22  you should consider the testimony presented to you
23  regarding how, and by whom, the transcript was made.
24  You may consider the knowledge, training, and
25  experience of the -- and experience of the

```
 1    translator, as well as the nature of the
 2    conversations and the reasonableness of the
 3    translation in light of all the evidence in the
 4    case.
 5                    Summaries and Charts
 6            Certain charts and summaries have been
 7    received into evidence.  You should give them only
 8    such weight as you think they deserve.
 9                         Knowingly
10            The word "knowingly" as that term has been
11    used from time to time in these instructions, means
12    that an act was done voluntarily and intentionally,
13    not because of mistake or accident.
14               Charges Against the Defendant
15            Count One:  Conspiracy to Provide Material
16    Support to a Foreign Terrorist Organization in
17    violation of 18 U.S.C. Section 2339B.
18            Count 1 of the second superseding
19    indictment charges the defendant, Said Rahim -- Said
20    Mohamad Rahim with violating Title 18 United States
21    Code Section 2339B, which makes it a crime for
22    anyone to conspire with someone else to knowingly
23    provide material support or resources to a foreign
24    terrorist organization.
25            The second superseding indictment alleges
```

```
1    that on or about October 2014 until in or about
2    March 2017 in the Dallas Division of the Northern
3    District of Texas and elsewhere, the defendant, Said
4    Azzam Mohamad Rahim, conspired with Coconspirator I
5    and other persons known and unknown to the grand
6    jury to violate 18 U.S.C. Section 2339B, to provide
7    material support or resources, including services
8    and personnel, to a foreign terrorist organization,
9    namely the Islamic State of Iraq and al-Sham (ISIS),
10   knowing that ISIS is a designated terrorist
11   organization and that ISIS has engaged and engages
12   in terrorist activity and terrorism.
13           A "conspiracy" is an agreement between two
14   or more persons to join together to accomplish some
15   unlawful purpose.  It is a kind of a "partnership in
16   crime" in which each member becomes the agent of
17   every other member.
18           For you to find the defendant guilty of
19   this crime, you must be convinced that the
20   government has proved each of the following beyond a
21   reasonable doubt:
22           First:  That the defendant and at least
23   one other person agreed to provide material support
24   or resources, including services or personnel to, a
25   Foreign Terrorist Organization, in this case, ISIS;
```

1          Second:  That the defendant knowingly

2    became a member of the conspiracy with the intent to

3    further its unlawful purpose;

4          Third:  That one of the conspirators

5    knowingly committed at least one overt act for the

6    purpose of furthering the conspiracy charged in

7    Count One of the second superseding indictment;

8          Fourth:  That the charged conspiracy

9    existed on or after May 15th, 2014, the date ISIS

10   was designated a Foreign Terrorist Organization; and

11         Fifth:  That this Court has jurisdiction

12   over the offense.

13         One may become a member of a conspiracy

14   without knowing all the details of the unlawful

15   scheme or the identities of all the other alleged

16   coconspirators.  If a defendant understands the

17   unlawful nature of a plan or scheme and knowingly

18   and intentionally joins a plan or scheme on one

19   occasion, that is sufficient to convict him for

20   conspiracy even though the defendant had not

21   participated before and even though the defendant

22   played only a minor part.

23         The government need not prove that the

24   alleged conspirators entered into any formal

25   agreement, nor that they directly stated between

1   themselves all the details of the scheme.

2   Similarly, the government need not prove at all --

3   similarly, the government need not prove that all of

4   the details of the scheme alleged in the second

5   superseding indictment were actually agreed upon or

6   carried out.  Nor must it prove that all of the

7   persons alleged to have been members of the

8   conspiracy were such, or that the alleged

9   coconspirators actually succeeded in accomplishing

10  any other unlawful objectives.

11        Mere presence at the scene of the event,

12  even with knowledge that a crime is being committed,

13  or the mere fact that a certain person may have

14  associated with each other, and may have assembled

15  together and discussed common aims and interests,

16  does not necessarily establish proof of existence of

17  a conspiracy.  Also, a person who has no knowledge

18  of a conspiracy, but who happens to act in a way

19  that advances some purpose of a conspiracy, does not

20  thereby become a conspirator.

21        For you to find the defendant guilty of

22  conspiracy to provide material support or resources

23  to a foreign terrorist organization, you must be

24  convinced beyond a reasonable doubt that the

25  defendant made an agreement to commit a crime that

77

1    would consist of the following elements:

2             First:  That the defendant knowingly

3    provided material support or resources, including

4    services or personnel, to the Foreign Terrorist

5    Organization, ISIS;

6             Second:  That the defendant did so,

7    knowing that ISIS was a designated terrorist

8    organization or that ISIS had engaged or was

9    engaging in a terrorist activity or terrorism; and

10            Third:  That the Court has jurisdiction

11   over the crime charged.

12            The term "material support or resources"

13   means, for the purposes of this case, any service to

14   include recruitment, or administrative service, or

15   personnel, including the defendant.

16            "Any service" refers to services provided

17   to a foreign terrorist organization.  Service, for

18   example, can mean an act done for the benefit or at

19   the command of another.  Independently advocating

20   for a cause is not providing a service to a foreign

21   terrorist organization.

22            The term "foreign terrorist organization"

23   has a particular meaning under the statute.  For an

24   organization to qualify to be a foreign terrorist

25   organization, it must have been designated as such

```
1   by the Secretary of the State through a process
2   established by law.  I instruct you that ISIS was so
3   designated by the Secretary of State on May 15,
4   2014.
5              Title 18, United States Code,
6   Section 2339B(d)(1) provides that the Court has
7   jurisdiction over the crime in Count One if you find
8   that any of the following applies to defendant:
9              One:  That he is a national of the United
10  States or an alien lawfully admitted for permanent
11  residence in the United States;
12             Two:  That the offense occurred in whole
13  or in part within the United States; or
14             Three:  That the offense occurred in or
15  affected interstate commerce.
16             Title 18, United States Code,
17  Section 2339B(h) provides that no person may be
18  prosecuted under this section in connection with the
19  term "personnel" unless the person has knowingly
20  provided, attempted to provide, or conspired to
21  provide a foreign terrorist organization with one or
22  more individuals (who may be or include himself) to
23  work under that terrorist organization's direction
24  or control or to organize, manage, supervise, or
25  otherwise direct the operation of that organization.
```

1   Individuals who act entirely independently of the

2   foreign terrorist organization to advance its goals

3   or objectives shall not be considered to be working

4   under the foreign terrorist organization's direction

5   and control.

6           The term "national of the United States"

7   means (A) a citizen of the United States, or (B) a

8   person who, even though not a citizen of the United

9   States, owes permanent allegiance to the United

10  States.

11          The First Amendment of the United States

12  Constitution provides:

13          "Congress shall make no law respecting an

14  establishment of religion, or prohibiting the free

15  exercise thereof or abridging the freedom of speech,

16  or the press; or the right of the people peaceably

17  to assemble, and to petition the government for

18  redress of grievances."

19          This amendment guarantees to all persons

20  of the United States the right to freedom of speech,

21  freedom of religion and freedom of association.

22  Because of these constitutional guarantees, no one

23  can be convicted on a crime simply on the basis of

24  his beliefs, his expressions of those beliefs or his

25  associations.  The First Amendment, however, does

1    not provide a defense to a criminal charge simply

2    because a person uses his associations, beliefs or

3    words to carry out an alleged activity.  Stated

4    another way, if a defendant's speech, expression, or

5    association were made with the intent to knowingly

6    provide material support or resources to ISIS, as

7    described in the indictment, then the First

8    Amendment would not provide a defense to that

9    conduct.

10          "Interstate Commerce" means commerce or

11   travel between one state, territory or possession of

12   the United States and another state, territory or

13   possession of the United States, including the

14   District of Columbia.  Commerce includes travel,

15   trade, transportation, and communication.

16          "Foreign Commerce" means commerce or

17   travel between any part of the United States,

18   including its territorial waters and any other

19   country, including its -- foreign commerce means

20   commerce or travel between any part of the United

21   States, including its territorial waters and any

22   other country including his territorial waters.

23   Commerce includes travel, trade, transportation and

24   communication.

25          Count Two:  Attempt to Provide Material

1    Support to a Foreign Terrorist Organization in

2    violation of 18 U.S.C. Section 2339B.

3              Count Two of the second superseding

4    indictment charges that the defendant, Said Azzam

5    Mohamad Rahim with violating Title 18 United States

6    Code Section 2339B, which makes it a crime for

7    anyone to attempt to knowingly provide material

8    support or resources to a foreign terrorist

9    organization, FTO.

10             The elements of providing material support

11   to an FTO are:

12             First:  That the defendant knowingly

13   provided, or attempted to provide, material support

14   or resources, including services or personnel, to

15   the FTO Islamic State of Iraq or al-Sham (ISIS).

16             Second:  That the defendant knew that ISIS

17   was a designated terrorist organization or that ISIS

18   had engaged or was engaging in terrorist activity or

19   terrorism; and

20             Third:  That this Court has jurisdiction

21   over the crime charged.

22             For you to find the defendant guilty of

23   attempting to provide material sport to an FTO, you

24   must be convinced that the government has proved

25   each of the following beyond a reasonable doubt:

1          First:  That the defendant intended to

2    provide material support or resources, including

3    services of personnel, to ISIS; and

4          Second:  That the defendant committed an

5    act constituting a substantial step towards the

6    commission of that crime which strongly corroborates

7    the criminal intent of the defendant and amounts to

8    more than mere preparation.

9          The same definitions of "material support

10   or resources" and "foreign terrorist organization"

11   apply.

12         Title 18 United States Code,

13   Section 2339B(d)(1) provides that the Court has

14   jurisdiction over the crime charged in Count Two if

15   you find that any one of the following applies to

16   the defendant:

17         One:  That he is national of the United

18   States or an alien lawfully admitted for permanent

19   residence in the United States;

20         Two:  The offense occurred in whole or in

21   part within the United States; or

22         Three:  That the offense occurred in or

23   affecting interstate or foreign commerce.

24         The same definitions of "national of the

25   United States" and "Interstate Commerce" and

1    "Foreign Commerce" apply.

2             The same instruction on the First

3    Amendment given in Count One applies to Count Two as

4    well.

5     Counts Three through Eight:  False Statement to a

6                          Federal Agent

7             Title 18 United States, Section 1001 makes

8    it a crime for anyone to knowingly and willfully

9    make a false our fraudulent statement in any matter

10   within the jurisdiction of the Executive,

11   Legislative, or Judicial Branch of the United States

12   Government.

13            For you to find the defendant guilty of

14   this crime, you must be convinced that the

15   government has proved each of the following beyond a

16   reasonable doubt:

17            First:  That the defendant made a false

18   statement to the Federal Bureau of Investigation

19   regarding a matter within its jurisdiction and

20   involving international terrorism;

21            Second:  That the defendant made the

22   statement intentionally, knowing that it was false;

23            Third:  That the statement was material;

24            Fourth:  That the defendant made the false

25   statement for the purpose of misleading the FBI; and

```
 1              Fifth:  That the matter involved
 2     international terrorism.
 3              A statement is material if it has a
 4     natural tendency to influence or is capable of
 5     influencing a decision of the FBI.  It is not
 6     necessary to show that the FBI was, in fact, misled.
 7                      Unanimity of Theory
 8              You have been instructed that your
 9     verdict, whether it's guilty or not guilty, must be
10     unanimous.  The following instruction applies to the
11     unanimity requirement as to Count One and Count Two.
12              Count One of the second superseding
13     indictment accuses the defendant of committing the
14     crime of conspiracy to provide material support to a
15     foreign terrorist organization, namely ISIS, in
16     three different ways:
17                  The first is that the defendant conspired
18     to provide material support or resources by trying
19     to recruit for ISIS.
20                  The second is that the defendant conspired
21     to provide material resources or -- sorry.  The
22     second is that the defendant conspired to provide
23     material support or resources by providing himself
24     as personnel for ISIS.
25                  The third is that the defendant conspired
```

1   to provide material support or resources by

2   providing administrative services to ISIS in the

3   form of operating and/or moderating the online chat

4   room, the State of the Islamic Caliphate.

5          Count Two of the second superseding

6   indictment accuses the defendant of committing the

7   crime of attempting to provide material support to a

8   foreign terrorist organization, namely ISIS, in

9   three different ways:

10         The first is that the defendant attempted

11  to provide material support or resources by trying

12  to recruit for ISIS.

13         The second is that the defendant attempted

14  to provide material support or resources by

15  providing himself as personnel for ISIS.

16         The third is that the defendant attempted

17  to provide material support or resources by

18  providing administrative services to ISIS in the

19  form of operating and/or moderating the online chat

20  room, the State of the Islamic Caliphate.

21         The government does not have to prove all

22  of these in order for you to return a guilty verdict

23  on these charges.  Proof beyond a reasonable doubt

24  on one is enough.  But in order to return a guilty

25  verdict on Count One, you must all agree that the

1    same one has been proven.  All of you must agree

2    that the government proved beyond a reasonable doubt

3    that the defendant conspired to provide material

4    support or resources to ISIS, by trying to recruit

5    for ISIS; or, all of you must agree that the

6    government proved beyond a reasonable doubt that the

7    defendant conspired to provide himself as personnel

8    for ISIS; or, all of you must agree that the

9    government proved beyond a reasonable doubt that the

10   defendant conspired to provide administrative

11   services to ISIS in the form of operating and/or

12   moderating the online chat room, the State of the

13   Islamic Caliphate.

14         The same applies for Count Two.  In order

15   to return a guilty verdict on Count 2, all of you

16   must agree that the same one has been proved.  All

17   of you must agree that the government proved beyond

18   a reasonable doubt that the defendant attempted to

19   provide material support or resources to ISIS, by

20   trying to recruit for ISIS; or, all of you must

21   agree that the government proved beyond a reasonable

22   doubt that the defendant attempted to provide

23   himself as personnel for ISIS; or all of you must

24   agree that the government proved beyond a reasonable

25   doubt that the defendant attempted to provide

1  administrative services to ISIS in the form of

2  operating and/or moderating the online chat room,

3  the State of the Islamic Caliphate.

4         Additionally, Count 1 of the second

5  superseding indictment accuses the defendant of

6  committing the conspiracy to provide material

7  support to a foreign terrorist organization, namely

8  ISIS, knowing that ISIS was a designated terror

9  organization, and that ISIS has engaged and engages

10 in terroristic activity and terrorism.

11        Count Two of the second superseding

12 indictment accuses the defendant of committing the

13 crime of attempting to provide material support to a

14 foreign terrorist organization, namely ISIS, knowing

15 that ISIS was a designated terrorist organization or

16 that ISIS has engaged or engages in terroristic

17 activity and terrorism.

18        It is sufficient for the government to

19 prove beyond a reasonable doubt either that the

20 defendant had specific knowledge of ISIS, had

21 specific knowledge that ISIS had been designated a

22 foreign terrorist organization by the United States

23 Government or that the defendant had specific

24 knowledge that ISIS engaged or engages in terrorist

25 activities.  It is not necessary for you to find

88

```
 1   both in order to return a verdict of guilty on these
 2   counts.  However, you must -- to return a verdict of
 3   guilty these counts, you must be unanimous as to
 4   what you do find.
 5                  Instructions on Deliberation
 6            To reach a verdict, whether it is guilty
 7   or not guilty, all of you must agree.  Your verdict
 8   must be unanimous on each count of the second
 9   superseding indictment.  Your deliberations will be
10   secret.  You will never have to explain your verdict
11   to anyone.
12            It is your duty to consult with one
13   another and to deliberate in an effort to reach
14   agreement if you can do so.  Each of you must decide
15   the case for yourself, but only after an impartial
16   consideration of the evidence with your fellow
17   jurors.  During your deliberations, do not hesitate
18   to reexamine your own opinions and change your mind
19   if you are convinced that you are wrong.  But do not
20   give up your honest beliefs as to the weight or
21   effect of the evidence solely because of the opinion
22   of your fellow jurors, or for the mere purpose of
23   returning a verdict.
24            Remember, at all times, you are the
25   judges, judges of the facts.  It is your duty to
```

8.9

1   decide whether the government has proved the

2   defendant guilty beyond a reasonable doubt.

3          When you go into the jury room, the first

4   thing that you should do is select one of your

5   number as your foreperson who will help guide you in

6   your deliberations and will speak for you here in

7   the courtroom.

8          A verdict form has been prepared for your

9   convenience.  It's right here, and it is attached to

10  the end of these instructions.  The foreperson will

11  write the unanimous answer of the jury in the spaces

12  provided, either guilty or not guilty.  At the

13  conclusion of the deliberations, the foreperson

14  should date and sign the verdict.

15         If you need to communicate with me during

16  your deliberations, the foreperson should write a

17  message and give it the court security officer.  I

18  will either reply in writing or bring you back into

19  the courtroom to answer your message.  Bear in mind

20  that you are never to reveal to any person, not even

21  to the Court, how the jury stands, numerically or

22  otherwise, on the second superseding indictment

23  until after you have reached a unanimous verdict.

24         Okay.  It's time for you to start

25  deliberating, Folks.

I will just say a couple of things. You set your own schedule. You select your foreperson and tell us what your schedule is going to be for the rest of the day or whatever. You tell us 1:00 to 1:30, you know, or 12:00 to 1:30, we're going to lunch or something like that, and we're going to work for the rest of the day. And here's our breaks, and this is what time we are leaving.

Remember on notes, it is very difficult to -- the notes are -- when you send a note out, it's important that it shows that there's a conflict by the jury over a certain issue that's material to the case. I can't just send you a transcript out, "Well, we want to hear the testimony of so-and-so." I can't do that without a dispute about a portion of the case that's material. You just have to hone it down as much as you can. Notes are not easy, we will answer them. But just remember, keep your notes to the disputes over the material things in the case.

All right, the jury verdict is yours. I'm giving it to you now. And if you will go back there, we will bring the evidence back there. Okay.

All rise. Good luck.

(Jury exits courtroom.)

1          THE COURT:  Mr. Walls, wait right there.

2     I'm sorry.  Just take a seat.  Please be seated.

3          All right.  You are an alternate.  And so

4     what that means right now is that you -- we can only

5     have 12 jurors in a criminal case, and we have 13

6     because of the possibility of someone, you know,

7     falling apart or something going down to 12 or 11,

8     and at least we would have one in there.

9          So I'm telling you you are still on duty

10    except that you are not with the rest of the jurors.

11    So you can go about your business, just keep a phone

12    number with Jenelle so we can call you and let you

13    know if you need to come back for any reason.  You

14    still can't talk about the case, because it's not

15    over yet.  But if you -- we need to have you back

16    here to start deliberations, say we lose somebody or

17    something, that's possible, we could have that.  And

18    then we will also let you know when the case is

19    over.  So just keep in touch.  Do you have any

20    questions?

21          ALTERNATE:  No.

22          THE COURT:  All right.  Thank you very

23    much, Mr. Walls.  All right.

24          THE COURT SECURITY OFFICER:  All rise.

25          THE COURT:  I would like to have all the

```
 1   exhibits together.  Make sure you have looked
 2   through all of them and that they are going back
 3   there after you have looked at all of them.
 4               (Pause in the Proceedings.)
 5               THE COURT:  We have the young person whose
 6   car was towed this morning as the foreperson, and
 7   they will break until 1:15.
 8               (Pause in the Proceedings.)
 9               MR. WHALEN:  Judge, it's all in.
10               THE COURT:  You've looked at all of it?
11               Are you sure about that?
12               MR. WHALEN:  I am sure about that.
13               THE COURT:  Ms. Martin and Ms. Meeks, have
14   you looked as well?
15               MS. MARTIN:  Yes, Your Honor.
16               THE COURT:  That's all going back.
17               PARALEGAL:  All the transcript binders and
18   the laptop.
19               THE COURT:  So separate transcript
20   binders.  All right.
21               PARALEGAL:  If you would like to send back
22   only one or a couple, we can do that.
23               THE COURT:  No, it's all right.  We will
24   send them all back.
25               All the transcripts came in?
```

93

```
 1          MS. MARTIN:  Yes.

 2          THE COURT:  And I would love for the

 3   government to pick up your notebooks.  So. . .

 4          (Pause in the proceedings.)

 5          THE COURT:  Is the computer not working?

 6          MR. WHALEN:  It's working.  The background

 7   says, "Project Save Childhood."

 8          THE COURT:  Do you have another one?

 9          MS. MARTIN:  Your Honor, may I step out

10   and try to find another one?

11          THE COURT:  Yeah, yeah.  Why don't you

12   just try to find another one.  And we can send it

13   back without the computer.  And we will get them a

14   computer as soon as we can.

15          In the meantime, Mr. Whalen, for the

16   record, you've looked at everything

17          MR. WHALEN:  Yes, Your Honor.  I have

18   reviewed the admitted list and what's in the carts,

19   and they do match.

20          THE COURT:  Okay.  So you are okay with

21   what's going back there.

22          MR. WHALEN:  Yes, Your Honor.

23          THE COURT:  And Ms. Martin, the same with

24   you.

25          MS. MARTIN:  Yes, Your Honor.
```

```
 1            THE COURT:  Ms. Meeks.

 2            MS. MEEKS:  Yes, Your Honor.

 3            THE COURT:  All right.  All right.  Okay.

 4   When we get the computer, please let me know and we

 5   will come out here and do the same thing.

 6            MR. WHALEN:  Thank you, Your Honor.

 7            THE COURT:  Be in recess.

 8                 (Recess taken.)

 9            THE COURT:  We have the tape recorder,

10   don't we?

11            THE CLERK:  Laptop.

12            THE COURT:  Why don't you look at it.  I

13   want you to look at it first.

14            Mr. Whalen, I want you to look at it.

15            MR. WHALEN:  Your Honor, I have looked at

16   it, and I have looked at the file folders and

17   anything that may have relevant information.  And

18   there's no information, so I am satisfied it's

19   clean.

20            THE COURT:  Ms. Martin, have you looked at

21   it?

22            MS. MARTIN:  Yes, I was up here earlier.

23   I think the IT wanted to test the DVD.

24            THE CLERK:  He acted like it was ready to

25   go when he checked with me.
```

```
 1                He is on his way up.

 2                (Pause in the proceedings.)

 3                THE COURT:  David, you tell us if this

 4      recorder is ready to go back there.

 5                IT CLERK:  It can go back there, but I

 6      would like to check the DVD and see if it plays okay

 7      so the jury doesn't have a problem with it.

 8                THE COURT:  Do you have a DVD?

 9                IT CLERK:  I will normally check with one

10      of the DVDs that they are providing, but my

11      understanding is they are back there.

12                THE COURT:  So we think we can send it

13      back, and then -- unless they have anything, and

14      then we will come and get you?

15                IT CLERK:  Yeah, we can do it that way.

16      Normally I would check before I put it back there.

17                THE COURT:  I think we are okay.

18                IT CLERK:  Okay.

19                THE COURT:  All right.  Let's send it

20      back.

21                MR. WHALEN:  I would also put on the

22      record, too, the WiFi has been turned off so they

23      won't have internet access.

24                IT CLERK:  They can't even turn it on even

25      if they tried.
```

1              THE COURT:  Okay.  Go ahead.

2              MR. WHALEN:  Nothing else, Your Honor.

3              THE COURT:  All right.  We will keep you

4    posted.

5              (Recess taken from 2:13 to 4:07.)

6              THE COURT:  This is a note.  It's not much

7    of a note.  It's attempting to watch Exhibit 64,

8    airport surveillance.  "Is there any way we can hook

9    up external speakers to laptop to make it easier to

10   --" something "to hear."  Foreperson, 5/3/19, and we

11   are going to send the speakers back there.  I'm not

12   going to respond to it, just send the speakers back

13   there.

14             MS. MARTIN:  No objection.

15             THE COURT:  All right.  Thank you.  Go

16   ahead.

17             MR. WHALEN:  That's fine Your Honor.

18             (Recess taken from 4:08 to 5:06.)

19             THE COURT:  Let's bring them in.

20             (Jury enters courtroom.)

21             THE COURT:  Ms. Petty, if you will be

22   stand, please.  You are the foreperson of the jury.

23   Is that correct?

24             FOREPERSON:  Yes, ma'am.

25             THE COURT:  Did you reach a verdict?

 1              FOREPERSON:  Yes, ma'am.

 2              THE COURT:  If you will hand it to

 3    Mr. Travis, please.

 4              Thank you very much.  You may be seated.

 5              Okay.  When I announce the verdicts, I

 6    will just take a poll and make sure that that is the

 7    verdict of each and every one of you.

 8              As to Count One:  We, the jury, find the

 9    defendant guilty of the offense charged in Count

10    One.

11              If that is your verdict each and every one

12    of you, raise your right hands.  That is a unanimous

13    show of hands.

14              As to Count Two as an offense -- guilty of

15    the offense charged in Count Two of the second

16    superseding indictment.  If that is your verdict

17    each and every one of you, please raise your right

18    hands.

19              Okay.  Then as to Count Three.  Guilty of

20    the offense charged in Count Three of the second

21    superseding indictment.  If that is your verdict

22    each and every one of you, raise your right hands.

23              Unanimous show of hands on all.

24              And then guilty of the offense charged in

25    Count Four of the second superseding indictment.  If

1    that is your verdict each and every one of you,

2    please raise your right hands.

3              Unanimous show of hands.

4              And then as to Count Five.  Guilty of the

5    offense charged in Count 5.  If that is your verdict

6    each and every one of you, raise your right hands.

7              Unanimous show of hands.

8              Count Six.  Guilty of the offense charged

9    in Count Six of the second superseding indictment.

10   If that is your verdict each and every one of you,

11   please raise your right hands.

12             All right.  Unanimous show of hands.

13             And then Count 7.  Guilty of the offense

14   charged in Count 7 of the second superseding

15   indictment.  If that is your verdict each and every

16   one of you, raise your right hands, please.

17             Unanimous show of hands.

18             Guilty of the offense charged in Count

19   Eight of the second superseding indictment.  If that

20   is your verdict, each and every one of you please

21   raise your right hands.

22             Thank you very much.

23             Ladies and Gentlemen, I don't know how to

24   thank you for this.  It was shorter than we thought.

25   We thought it would be two weeks; thank goodness it

```
 1   wasn't.  It was a lot of stuff.  I mean you-all had
 2   a lot of information given to you.  And the lawyers
 3   did a good job, but you really, really, focused on
 4   everything.  I appreciate it so much.  I think your
 5   verdict is supported by the evidence.  I really do.
 6            You are free to go.  I will tell you the
 7   lawyers can't talk to you by Local Rule.  You can
 8   talk to them.  I would advise -- it's up to you,
 9   it's up to you totally, but I would advise you not
10   to.  Because, you know, your deliberations are
11   secret and sacred.  Nobody knows what went on in
12   that room except you, and you should keep it that
13   way.  Because if you talk to a lawyer from either
14   side, either the defense or the government, you will
15   tend to start -- you might tend to start talking
16   about what happened in there, because that's the
17   only thing you have in common.  And I think that's
18   very dangerous, because I have had many a case where
19   we have ended back down here with all of the jurors
20   in a hearing posttrial and all sorts of things go
21   on.  So I would advise you not to.  But besides
22   that, I will tell you on behalf of all the lawyers,
23   everyone appreciates your service and you are all
24   free to go.  Thank you very much
25            (Jury exits courtroom.)
```

1          THE COURT:  Is there anything else before
2    we adjourn, Mr. Whalen?
3          MR. WHALEN:  No, Your Honor.
4          THE COURT:  You did a great job.
5          Ms. Martin and Ms. Meeks, you did a great
6    job, too.
7          THE COURT:  Anything else?
8          MR. WHALEN:  No, Your Honor.
9          THE COURT:  All right.  We are in recess.
10          (Court in recess at 5:12 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1              C E R T I F I C A T E

2          I, Shawnie Archuleta, CCR/CRR, certify

3    that the foregoing is a transcript from the record

4    of the proceedings in the foregoing entitled matter.

5          I further certify that the transcript fees

6    format comply with those prescribed by the Court and

7    the Judicial Conference of the United States.

8          This 21st day of March 2020.

9

10

11                      s/Shawnie Archuleta
                        Shawnie Archuleta CCR No. 7533
12                      Official Court Reporter
                        The Northern District of Texas
13                      Dallas Division

14

15

16   My CSR license expires:  December 31, 2020

17   Business address:  1100 Commerce Street
                        Dallas, TX  75242
18   Telephone Number:  214.753.2747

19

20

21

22

23

24

25

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER – 214.753.2747**